OPINION OF THE COURT
Stephen G. Crane, J.
This case presents two issues. First, may a certified social worker be appointed to examine a defendant in relation to a potential defense of lack of criminal responsibility and to provide “psychiatric evidence” as defined in CPL 250.10? Second, may a certified social worker be appointed to examine a defendant and to render an expert opinion, as a “psychiatric examiner” under CPL 330.20 (15), in the determination of the current mental state of a defendant who has been found to be not responsible by reason of mental disease or defect?
STATEMENT OF THE CASE
The defendant, Matthew Scala, was originally charged with the crimes of criminal mischief, third degree (Penal Law § 145.05) and aggravated harassment, first degree (Penal Law § 240.31), class E felonies. These charges arose from his conduct *832 in damaging portions of a building used by The Christophers, a Roman Catholic charitable and educational organization. He also allegedly sent obscene and threatening letters to the director and other staff members of this organization. Defendant had worked for The Christophers several years ago for a few weeks.
Concerned about the defendant’s mental state and its effect on a disposition of this case, defense counsel and the Assistant District Attorney moved jointly, pursuant to CPL 390.20 (3), for an order directing a prepleading examination of defendant’s mental state.[1] The court appointed Hillel Bodek, M.S.W., C.S.W., a forensic clinical social worker, to conduct this examination on a longitudinal basis[2] at the Bellevue Hospital Psychiatric Prison Ward.
Mr. Bodek examined the defendant and submitted a report.[3] It concludes, inter alla, that at the time he engaged in his alleged criminal conduct, Mr. Scala was “suffering from a mental disease, to wit: paranoid schizophrenia in acute exacerbation, as a result of which he lacked the substantial capacity to know and appreciate the nature, consequences and wrongfulness of his behavior.” After reviewing this report, the defendant indicated that he would interpose a defense pursuant to Penal Law § 30.05 of not responsible by reason of mental disease.[4]
*833 The People moved pursuant to CPL 220.15 (l)[5] for a hearing to examine Mr. Bodek with regard to his opinion of the defendant’s mental state and criminal responsibility.[6] At the hearing, I qualified Mr. Bodek as an expert with regard to the issue of the defendant’s lack of criminal responsibility by reason of mental disease.[7] Based on his testimony, the People indicated that they could not at trial disprove beyond a reasonable doubt the defense of not responsible by reason of mental disease.
After defendant’s plea was accepted, he was committed in accordance with CPL 330.20 (2) to the Commissioner of Mental Health for an examination of his current mental status. The defendant was examined by Beneb Ting, M.D., and Paul Chellappa, M.D., two psychiatrists designated by the Commissioner. They both opined that the defendant suffered from a dangerous mental disorder as defined in CPL 330.20 (1) (c). Defense counsel then moved for an order authorizing an additional examination by a psychiatrist retained by the defense. That motion was granted on consent. The court, not being satisfied with the findings of the psychiatric examiners designated by the Commissioner of Mental Health, again appointed Hillel Bodek, *834 M.S.W., C.S.W., as a psychiatric examiner, in accordance with CPL 330.20 (15).[8] Mr. Bodek reexamined the defendánt and filed another report with the court. He opined that the defendant suffered from a mental illness, as that term is defined in CPL 330.20 (1) (d), but that he did not suffer from a dangerous mental disorder.
Pursuant to CPL 330.20 (6), the court conducted an initial hearing. The People called Drs. Beneb Ting and Paul Chellappa. Each testified that the defendant suffered from a dangerous mental disorder. Defendant called his psychiatrist, Dr. Azariah Eshkenazi. He testified that although the defendant suffered from a mental disorder, he did not suffer from a dangerous mental disorder or require inpatient psychiatric treatment and could be released conditionally. The parties stipulated that the extensive report submitted by Mr. Bodek be received in evidence as an expert opinion.
At the conclusion of the hearing, the court found that the defendant did not currently suffer from a dangerous mental disorder but did currently suffer from a mental illness, as defined in CPL 330.20 (1) (d).[9] Pursuant to CPL 330.20 (7), the court issued an order of conditions and an order committing the defendant to the custody of the Commissioner of Mental Health under Mental Hygiene Law article 9.
THE USE OF CERTIFIED SOCIAL WORKERS TO PROVIDE “PSYCHIATRIC EVIDENCE” (CPL 250.10)
This first issue raises several considerations.
A. Whether certified clinical social workers[10] may examine defendants and provide psychiatric evidence depends on their qualifications and license.
*835 (1) Qualifications
It is helpful in understanding the qualifications of a clinical social worker in performing these tasks to learn what such a social worker is supposed to be.
The National Registry of Health Care Providers in Clinical Social Work 1984-1985, published by the Board of the National Registry of Health Care Providers in Clinical Social Work, adopts the definition of clinical social work composed by the National Federation of State Societies of Clinical Social Work: “Clinical Social Work Practice includes the provision of mental health services for the diagnosis, treatment and prevention of mental and emotional disorders in individuals, families and groups. Clinical Social Work practice is based on knowledge and theory of psychosocial development, behavior, psychopathology, unconscious motivation, interpersonal relationships, and environmental stress. Treatment interventions include, but are not limited to, individual, marital, family and group psychotherapy” (id., at p 2). Illuminating this definition is the registry’s description of the education required for the practice of clinical social work. “A Clinical Social Worker is an individual who has a Master’s Degree from an accredited school of social work, and whose educational preparation includes a study of psychosocial development, normal behavior, psychopathology, unconscious motivation, interpersonal relations and the effects of environmental stress, physical illness and disability. Theoretical knowledge is specifically related to direct intervention with individuals, couples, families and small groups. A field practicum is required in order to integrate theory with practice. A minimum of two years supervised clinical work beyond the Master’s Degree is required as preparation for clinical practice” (Ibid; emphasis added).
My former colleague, Benjamin Altman, J., has ruled in favor of the capacity of a certified social worker to testify as an expert with respect to a defendant’s mental capacity to proceed. Dealing with the qualifications of such an expert to diagnose mental disorders, Justice Altman wrote in People v Gans (119 Misc 2d 843, 844 [Sup Ct, NY County 1983]), “[C]linical social work, as a profession, is one of the core mental health disciplines. As are psychiatrists and clinical psychologists, clinical social workers are skilled in the diagnosis and treatment of mental disorders * * * [CJlinical social workers, also nonmedical mental health professionals, bring their expertise in dealing with the relationship between social and emotional functioning as well as their expertise in social policy and in environmental intervention to *836 the mental health field.” Properly trained clinical social workers are manifestly competent to diagnose mental disorders.
(2) Licensing
The Education Law provides for the licensure of certified social workers. Education Law § 7701 defines practice as a certified social worker as, “engaging, under such title, in social casework, social group work, community organization, administration of a social work program, social work education, social work research, or any combination of these in accordance with social work principles and methods. The practice of social work is for the purpose of helping individuals, families, groups and communities to prevent or to resolve problems caused by social or emotional stress.”
Laws of 1977 (ch 893) added section 162 (first 16) and section 253 (8) to the Insurance Law. This legislation extended coverage of optional medical insurance to services rendered by qualified certified social workers. This coverage now embraces services of such social workers among the professionals who diagnose and treat mental, nervous and emotional disorders and ailments. The legislation contemplates the option of reimbursement for the services of such social workers when these services would have been reimbursable if provided by a psychiatrist or certified psycholgist.[11]
Clearly, the diagnosis and treatment of mental disorders by certified social workers in accordance with clinical social work principles and methods falls within the scope of their license.

B. May a certified social worker who is qualified testify to an opinion of a defendants criminal responsibility ?

(1) Status as a nonphysician
It has been established that a properly qualified person, although not a physician, may be sworn as a medical expert. (See, People v Rice, 159 NY 400, 410 [1899]; Matter of Boyle, 271 App Div 614, 616 [4th Dept 1947].) “ ‘[A]nyone who is shown to have special knowledge and skill in diagnosing and treating human ailments is qualified to testify as an expert, if his *837 learning and training show that he is qualified to give an opinion on the particular question at issue.’ ‘It is not essential that the witness be a medical practitioner.’ ” (Jenkins v United States, 307 F2d 637, 644, quoting 32 CJS, Evidence, § 537.)
In determining whether a nonphysician is qualified to provide an opinion with regard to the mental status of a defendant, a sound principle applicable here was set forth in People v Hawthorne (293 Mich 15, 24-25, 291 NW 205, 209 [concurring opn]): “When a nonmedical is offered as an expert on subjects in the orbit of medical science, the trial court is put on guard and should take greater precaution in the preliminary inquiry to determine the witness’s qualifications and the extent of his knowledge than might be necessary when a graduate of a medical school is proposed. Yet it may well be that for some purposes, as where the issue concerns proper medical treatment, even a licensed physician would not possess sufficient knowledge in a particular branch of his calling to satisfy a trial judge who, within discretionary limits, insists upon a high standard of reliability. There is no magic in particular titles or degrees and, in our age of intense scientific specialization, we might deny ourselves the use of the best knowledge available by a rule that would immutably fix the educational qualifications to a particular degree.”
The enumeration of psychiatrists and, in some cases, psychologists in various statutes dealing with mental health expertise follows the historical progression that has developed nationwide concerning expert testimony on mental health issues. Originally, only physicians and psychiatrists provided testimony in such cases. However, over the past three decades courts have shown an increasing willingness to accept the testimony of qualified clinical psychologists and, more recently, of qualified clinical social workers, as experts, with regard to mental health issues.[12]
For instance, in relation to defendants’ capacity to proceed — the forensic mental health issue arising most commonly in the criminal courts — under the present statutory framework set forth in CPL article 730, the defendant must be examined by two qualified psychiatrists. The only exception was added when the former Code of Criminal Procedure (§ 659) was replaced in 1971 by the CPL (730.10 [8]), as originally enacted by Laws of 1970 (ch 996; now CPL 730.10 [7]). In the case of a mental defective, a *838 certified psychologist may be substituted for one of the qualified psychiatrists. (See, CPL 730.20 [1].)
Nonpsychiatrists not enumerated as psychiatric examiners under CPL article 730 have, nevertheless, been permitted to testify as experts concerning the capacity of defendants to proceed. (See, People v Gans, supra, at pp 846-847 [expert testimony by a clinical social worker]; and People v Burgess, 85 Misc 2d 1057,1058 [Sup Ct, Suffolk County 1976] [expert testimony by a school psychologist and by a special educator].)
Firm support of the view that properly qualified nonmedical mental health professionals could provide expert testimony as to a defendant’s mental state relative to the issue of criminal responsibility was given by the United States Court of Appeals for the District of Columbia Circuit, in Jenkins v United States (supra). There, the court held (pp 645-646): “The determination of a psychologist’s competence to render an expert opinion based on his findings as to the presence or absence of mental disease or defect must depend upon the nature and extent of his knowledge. It does not depend upon his claim.to the title ‘psychologist.’ * * * We hold only that the lack of a medical degree, and the lesser degree of responsibility for patient care which mental hospitals usually assign to psychologists, are not automatic disqualifications. Where relevant, these matters may be shown to affect the weight of their testimony, even though it be admitted in evidence. The critical factor in respect to admissibility is the actual experience of the witness and the probable probative value of his opinion. The trial judge should make a finding in respect to the individual qualifications of each challenged expert. Qualifications to express an opinion on a given topic are to be decided by the judge alone. The weight to be given any expert opinion admitted in evidence by the judge is exclusively for the jury.” (See also, Qualification of nonmedical psychologist to testify as to mental condition or competency, Ann., 78 ALR2d 919, 920-921 [“It appears, however, that the use of the psychologist in present society is growing and with this will come an increasing tendency to call him as an expert witness on the question of mental condition or competency.”])
In 1965, the California Supreme Court held that, “The trial court erred in ruling that only one with medical training could testify on the issue [of the diagnosis of mental disorder and the defense of lack of criminal responsibility].” (People v Davis, 62 Cal 2d 791, 801, 402 P2d 142 [1965].) Subsequently, in United States v Riggleman (411 F2d 1190, 1191 [4th Cir 1969]), the court wrote, “Riggleman urges and invites this court to adopt a *839 rule that only a psychiatrist be permitted to testify as an expert on the question of an accused’s responsibility for his acts. However, we think the better rule is that the determination of a psychologist’s competence to render an expert opinion based on his findings as to the presence or absence of mental disease or defect must depend upon the nature and extent of his knowledge; it does not depend upon his claim to the title of psychologist or psychiatrist.” In People v Diaz (51 NY2d 841 [1980]), over a vigorous dissent by Meyer, J. (in which he was joined by Fuchsberg, J.), the court found no error in the refusal to accept testimony of an experienced, though not certified, psychologist concerning his interpretation of tests he had administered because his expertise in such interpretation had not been established. Yet, the court cautioned that, “[t]his is not to say that only a psychiatrist may testify in this regard” (51 NY2d, at pp 842-843).
Prior to the implementation of the Insanity Defense Reform Act of 1980 (L 1980, ch 548), CPL 330.20 enumerated only psychiatrists as examiners to aid in determining the release of a defendant acquitted by reason of mental disease or defect. Nevertheless, the testimony of clinical psychologists was admitted in this area when it v/as determined that they had the necessary training and qualifications to give expert opinions regarding the mental status of defendants. Of course, the Insanity Defense Reform Act of 1980 expanded the category of psychiatric examiners to include certified psychologists (CPL 330.20 [1] [r] [defining such persons as “licensed”]; but see, CPL 730.10 [6]).
(2) Omission of certified social workers from statutory enumeration
CPL 250.10 (1) (a) defines “psychiatric evidence” as “[evidence of mental disease or defect to be offered by the defendant in connection with the affirmative defense of lack of criminal responsibility by reason of mental disease or defect.” The statute does not limit “psychiatric evidence” to the opinions of psychiatrists and psychologists. CPL 60.55 sets forth rules of evidence relating to “psychiatric testimony”.
It is clear that although psychiatrists (and, since 1980, psychologists) have been enumerated in statutes relating to the insanity defense, psychiatric evidence cannot be limited to the testimony of experts from these disciplines alone. Otherwise, for instance, the expert testimony of a neurologist as to a defendant’s mental condition caused by a neurological ailment would be excluded, and no neurologist could be appointed to examine such a defendant relative to the issue of criminal responsibility. *840 The opinion of anyone who is qualified as an expert in mental disorders may be received as the sole “psychiatric evidence” in a particular case, even if the expert is neither a psychiatrist nor a psychologist. Though they are not enumerated under CPL 250.10 and 60.55, properly qualified certified social workers, nonpsychiatric physicians and other properly qualified licensed nonphysician mental health professionals not otherwise excluded by statute may be appointed to examine persons with regard to the issue of the affirmative defense of lack of criminal responsibility due to mental disease or defect.
C. What weight is to be accorded to the opinion of a certified clinical social worker?
It has been well established that the determination of the competence of a nonmedical mental health professional to render an expert opinion depends on the nature and extent of his knowledge. It does not depend on his professional title or discipline. (See, Jenkins v United States, supra, at p 645.) The opinion of a nonmedical mental heath expert is not, in and of itself, outweighed by the contrary opinion of a psychiatrist. (See, In Interest of CL.M., 625 SW2d 613, 615 [Mo, en banc, 1981].) The weight to be accorded to the opinion of either expert must depend on the thoroughness of the investigation, the persuasiveness of the opinion and the training, experience and professional demeanor of the witness.[13]
To summarize: Even though not enumerated under CPL 250.10 and 60.55, properly qualified certified social workers may be appointed to examine defendants for the purpose of rendering opinions as to their mental condition with regard to the affirmative defense of lack of criminal responsibility by reason of mental disease or defect. They may provide expert opinions that may serve as the sole “psychiatric evidence” in relation to such affirmative defense. The weight to be accorded to the testimony of any forensic mental health expert is within the province of the trier of fact. This weight is unrelated to the particular professional discipline of the expert. Rather, it depends upon the assessment of the training and professional experience of the expert, the nature, extent and thoroughness of the examination and evaluation, the reasonableness and persuasiveness of the conclusion or opinion, the logic with which it is derived and the demeanor of the expert as a witness.
*841 THE USE OF CERTIFIED SOCIAL WORKERS AS PSYCHIATRIC EXAMINERS IN RELATION TO THE DETERMINATION OF CURRENT MENTAL STATUS AND CURRENT DANGEROUSNESS PURSUANT TO CPL 330.20 (15)
CPL 330.20 (1) (s) defines a “psychiatric examiner” for the purposes of CPL 330.20 as “a qualified psychiatrist or a licensed psychologist who has been designated by the commissioner to examine a defendant pursuant to this section, and such designee need not be an employee of the department of mental hygiene” (emphasis added). CPL 330.20 (15) entitled, “Designation of psychiatric examiners”, establishes two classes of “psychiatric examiners”, those designated by the Commissioner, and those who may be designated by the court or by a party, rather than by the Commissioner. That section provides, “In addition, the court may on its own motion, or upon request of a party, may [sic] designate one or more psychiatric examiners to examine the defendant and submit a report of their findings. The district attorney may apply to the court for an order directing that the defendant submit to an examination by a psychiatric examiner designated by the district attorney, and such psychiatric examiner may testify at the hearing” (emphasis added).
It is clear that CPL 330.20 (15) distinguishes between psychiatric examiners defined in CPL 330.20 (1) (s) who are designated by the Commissioner and those designated by the court or by one of the parties. Although a psychiatric examiner designated by the Commissioner must be either a qualified psychiatrist or a certified psychologist, the statute places no such definitional limitation on a psychiatric examiner designated by the court, by the defense, by the People or by another party (e.g., the Mental Health Information Service).
It is reasonable that the Commissioner have strict guidelines for the appointment of examiners from among the numerous persons of varying levels of skill who are in the employ of his department (either as employees or consultants). Yet, there is no reason for such a limitation on the court or a party which, unlike the Commissioner, can personally take the time to screen and obtain qualified experts from among a wide pool of mental health professionals.
Though they are not specifically enumerated in the statute, properly qualified certified social workers and psychiatric nurses have been permitted to provide expert testimony as to the current mental status and future prognosis of persons who have been charged with criminal offenses but acquitted by reason of insanity. (See, Matter of Torsney, 66 AD2d 281, 290, *842 294 [2d Dept 1979], revd on other grounds 47 NY2d 667, 679 [1979].) A similar approach has obtained appellate approval in Colorado. (See, People v Giles, 192 Col 240, 557 P2d 408, 413-414 [1976].) Prior to the 1980 revision of CPL 330.20, only psychiatrists were enumerated. Nevertheless, the opinions of psychologists, who are now enumerated in the current revision of CPL 330.20, had been accepted, as expert, with regard to these determinations. (See, Matter of Torsney, 66 AD2d, at pp 289-294, 47 NY2d, at pp 677-681.)
Additionally, the regulations of the Commissioner of the Office of Mental Health issued pursuant to the 1980 revision of CPL 330.20 provide that certified social workers may serve on the institutional forensic committees which must review all requests for release, furlough and transfer of individuals coming under CPL 330.20 (See, 14 NYCRR 541.3.) In doing so, they serve on an equal basis with psychiatrists. There is no rational basis for finding that certified social workers, as part of an institutional forensic committee, are qualified to evaluate the mental state and need for treatment of a 330.20 patient once he is committed to the Commissioner, yet are not qualified to make the same assessment at an initial hearing pursuant to CPL 330.20 (6), (7) as an expert retained by the court, the People, the defense or another party.
Accordingly, I hold that a properly qualified certified social worker may be appointed to act as a “psychiatric examiner” appointed by the court, the defense, the People or a party other than the Commissioner pursuant to CPL 330.20 (15).
Clinical social workers, who provide the majority of the psychotherapeutic services rendered in the United States (see, Social Workers Vault into a Leading Role in Psychotherapy, NY Times, Apr. 30, 1985, § C, p 1) are particularly suited to be of assistance to the courts in resolving clinical-legal issues and in facilitating the effective administration of individualized justice in cases where issues relating to psychosocial dysfunction and mental disorders are involved.[14]
In his memorandum approving Laws of 1984 (ch 990), Governor Cuomo noted, “The bill recognizes the important role played by certified social workers in providing mental health care and eliminates unfair and unwarranted discrimination against *843 these qualified professionals. The bill will, moreover, maximize client choice in the purchase of mental health services and increase access to mental health care.”[15] (1984 McKinney’s Session Laws of NY, at 3667.) Indeed, during the past several years, the administration of criminal justice has been substantially enriched in this jurisdiction by the participation of Hillel Bodek, M.S.W., C.S.W., a dedicated and talented forensic clinical social worker. Participation in the court system by such forensic clinical social workers should be encouraged and facilitated.

. The court may order a prepleading mental health and physical examination of a defendant and a prepleading investigation by the Department of Probation to provide material that would reasonably aid in the administration of justice by facilitating the plea bargaining process. (People v Crosby, 87 Misc 2d 1079, 1080 [Sup Ct, Bronx County 1976].)

. Effective plea negotiations depended heavily on a comprehensive evaluation of the defendant’s mental state. This evaluation, unlike an examination pursuant to CPL article 730 (which focuses on the issue of the defendant’s competence to proceed), required a more extensive process including observations of the defendant’s behavior and psychosocial functioning over a period of time (“longitudinal evaluation”). CPL 390.30 (2) authorizes the court to remand a defendant for a 30-day period to a designated facility for the purpose of such a thorough examination. This statutory authorization, thus, contemplates examinations on a longitudinal basis.

. The report includes detailed reviews of the defendant’s history and prior mental health records. It gives the results of a battery of psychodiagnostic tests, a complete mental status examination and interviews with the defendant’s family. It ends with an assessment of the defendant’s mental functioning.

. Laws of 1984 (ch 668) effective November 1, 1984, repealed Penal Law § 30.05 and added a new section, 40.15. This changed the nature of lack of criminal responsibility by reason of mental disease or defect from a defense to an affirmative defense. However, the case at bar arose prior to the effective date of the new statute and is controlled by Penal Law § 30.05. This change has no effect on the issues now under consideration.

. CPL 220.15 (1) provides that such a plea may be entered with the permission of the court and the consent of the People. This statute permits the acceptance of this defense by plea, without the need for a trial (formerly required), when the People, the defense and the court agree that a defendant lacks criminal responsibility because of mental disease or defect.

. Because this opinion was rendered by a certified social worker rather than a qualified psychiatrist or certified psychologist, there arose the first issue mentioned earlier.

. In doing so, I applied the following criteria:
A) The proposed expert should be licensed as a certified social worker pursuant to Education Law article 154 and deemed qualified pursuant to the provisions of Laws of 1977 (ch 893) as eligible for medical insurance reimbursement (see, n 11, infra.).
B) The certified social worker should have completed a clinical core curriculum or its equivalent during graduate training (not all social workers specialize in clinical work and, therefore, not all social workers have completed such coursework).
C) The expert should have completed at least five, 15-semester hour courses, or their equivalent, of postgraduate training in clinical social work. This criterion is based on the standard established by the New York State Society of Clinical Social Work Psychotherapists for advancement to fellow status in that organization.
D) The social worker should be certified by the National Registry of Health Care Providers in Clinical Social Work or by the National Association of Social Workers Clinical Register. Under this criterion, certification by the Academy of Certified Social Workers (ACSW), which is a certification of general rather than clinical social work competence, does not suffice.
E) The clinical social worker’s training and experience should include the prior performance of forensic mental health evaluations under supervision.

. At this point, because Mr. Bodek is neither a psychiatrist nor a certified psychologist, there arose the second issue mentioned earlier.

. This finding under the statute means that he “currently suffers from a mental illness for which care and treatment as a patient, in the in-patient services of a psychiatric center under the jurisdiction of the state office of mental health, is essential to [his] welfare and that his judgment is so impaired that he is unable to understand the need for such care and treatment” (CPL 330.20 [1] [d]).

. Although many certified social workers provide direct services to clients, not all certified social workers possess the graduate and postgraduate education and supervised experience necessary to be properly considered clinical social workers (see, criteria A-D set forth in n 7, supra; cf. Jenkins v United States, 307 F2d 637, 644-645 [DC Cir, en banc, 1962] [distinguishing between psychologists in general and clinical psychologists in particular]). Only individuals who meet such criteria should be deemed competent to render expert opinions, as certified social workers, of a person’s mental state. (Cf People v Hawthorne, 293 Mich 15, 291 NW 205, 209 [1940] [concurring opn].) These professionals are hereinafter sometimes referred to as clinical social workers.

. Certified social workers contemplated by Insurance Law § 162 (first 16) and § 253 (8) must have, inter alla, three years of full-time supervised postgraduate experience in the provision of psychotherapy services. During the pendency of this case, the Insurance Law was amended by Laws of 1984 (ch 990) to add section 162 (19) and section 253 (11). The amendment provided for mandatory medical insurance reimbursement for services in the diagnosis and treatment of mental disorders rendered by certified social workers with six years of such experience if the insurance policy provides for reimbursement for those services when provided by a psychiatrist or certified psychologist.

. See, Bernstein, The Social Worker as a Courtroom Witness, Social Casework (Nov. 1975) 521-525; and Bernstein, The Social Worker as an Expert Witness, Social Casework (July 1977) 412-417.

. See, 4 Mental Disability L Rep (May-June 1980) 196, reporting the results of a comparative study of the performance of forensic psychiatrists, psychologists and social workers.

. Effective mental health intervention often enables the criminal justice system to dispense effectively the individualized justice set forth as an ideal in People v Selikoff (35 NY2d 227, 233-234 [1974]). To be effective, such mental health intervention requires a combination of clinical skills and ability to negotiate social systems. This combination is unique to clinical social work among the various mental health professions.

. See, Affordable Mental Health, NY Times, July 13,1984, editorial page; and Mental Health for Flatbush, Too, NY Times, Jan. 2,1985, editorial page.