COURT OF APPEALS OF VIRGINIA

Present:  Judges Benton, Elder and Lemons
Argued at Norfolk, Virginia


ROSE MARIE OUTLAND JONES
                                        OPINION BY
v.  Record No. 2159-97-1         JUDGE JAMES W. BENTON, JR.
                                      OCTOBER 27, 1998
COMMONWEALTH OF VIRGINIA


           FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
                      Johnny E. Morrison, Judge

          Michael Rosenberg for appellant.

          John H. McLees, Jr., Assistant Attorney
          General (Mark L. Earley, Attorney General, on
          brief), for appellee.



     A jury convicted Rose Marie Outland Jones of murder and use
of a firearm in the commission of murder.  Jones contends the
convictions should be reversed because the trial judge denied her
the opportunity to present evidence in support of her insanity
defense when she refused to enter a plea of "not guilty by reason
of insanity."  For the reasons that follow, we reverse the
convictions and remand for a new trial.

                                 I.

     Rose Marie Outland Jones was indicted for murder and use of
a firearm in the commission of murder.  Prior to trial, she
timely notified the attorney for the Commonwealth that she would
put in issue her sanity at the time of the charged offenses and
would present psychiatric evidence in support of that defense.
When Jones was arraigned, she pled not guilty.

     The Commonwealth's evidence at trial included Jones' taped

confession to police. In her confession, Jones said she and her husband had been married two months and were having marital problems. Jones said she purchased a gun a month before she married her husband because she was afraid of him. She had previously obtained warrants for his arrest for stalking and assault but dropped both charges because she was afraid of him.

After trying to make the marital relationship work, she decided it would not work. Her husband was "pressuring" her to live a life-style she did not like. On the day of the shooting, they argued because Jones wanted to separate from him. She told him that she was having "problems" and needed to get away. Jones' husband did not want her to leave him and did not "want to go nowhere." She said her husband, who had been violent toward her in the past, began to get "upset." In response to his reaction, Jones went to the bedroom, retrieved her gun, loaded it, and hid it in a laundry hamper beside her bed. When her husband entered the bedroom and suggested they go for a ride, Jones declined and told him she believed he intended to kill them both. Because Jones thought her husband was going to get his gun, she grabbed her gun and tried unsuccessfully to fire it at him. She then pulled back the slide and shot him. Jones said she followed her husband out the door and was going to shoot him again because she wanted to kill him. When he fell to the ground, Jones dialed 911 and reported the incident to the police. She then called the emergency number she had been given to use

when she needed to contact a counselor at the Community Help Center.

Jones' neighbor testified that she went to her door after she heard a gunshot. She saw Jones' husband stagger from his front door and heard him say, "Girl, you shot me," or "Why did you shoot me?" The neighbor saw Jones with a gun in her hand and watched Jones' son wrestle the gun from her. When the police arrived and handcuffed Jones' son, Jones told the police, "He didn't have anything to do with it - I did."

At the close of the Commonwealth's case, the Commonwealth objected to Jones defending both on the grounds of self-defense and insanity. The trial judge required Jones' defense counsel to elect whether to proceed on a plea of not guilty based on self-defense or not guilty by reason of insanity. The trial judge also ruled that he was "not going to allow the expert to say [Jones was] insane if [Jones was] not pleading 'not guilty by reason of insanity.'" Jones' counsel then notified the judge that Jones would not proceed with an insanity defense because of the judge's ruling. Jones proffered to the trial judge an oral summary of the testimony of Dr. Alice Twining, a clinical psychologist, and Dr. Twining's written report of her forensic evaluation of Jones.

In Jones' defense, several witnesses related the difficulties between Jones and her husband. The witnesses testified that Jones' husband abused and harassed Jones and had

threatened to kill her.  A witness testified that in early 1996 she heard Jones' husband say that "before he let [Jones] go he would kill her first."  Jones' son testified that Jones' husband threatened to kill Jones and often carried a gun.  A police officer testified that three months prior to Jones' husband's death, Jones obtained a warrant for her husband's arrest for stalking her.

The jury convicted Jones of murder and use of a firearm in the commission of murder.

## II.

Code § 19.2-254 provides that "[a]n accused may plead not guilty, guilty or nolo contendere."  Neither that statute nor any other statute authorizes or requires an accused to enter a plea of "not guilty by reason of insanity."  Indeed, Code § 19.2-168, which contains the statutory requirement for preserving the defense of insanity, does not require an accused to plead "not guilty by reason of insanity."  In pertinent part, Code § 19.2-168 provides as follows:

> In any case in which a person charged with a crime intends (i) to put in issue his sanity at the time of the crime charged and (ii) to present testimony of an expert to support his claim on this issue at his trial, he, or his counsel, shall give notice in writing to the attorney for the Commonwealth, at least twenty-one days prior to his trial, of his intention to present such evidence.

Id.

The Attorney General candidly concedes that "[t]he

- 4 -

Commonwealth knows of no legal requirement that a defendant enter a formal plea of 'not guilty by reason of insanity' in order to be permitted to present evidence of insanity." Furthermore, the parties agree that Jones complied with the statutory notice requirements. In view of the evidence in the record that Jones complied with the requirements of Code §§ 19.2-254 and 19.2-168, we hold that the trial judge erred when he ruled that the trial could not proceed in an orderly fashion on Jones' insanity defense unless Jones entered a formal plea of "not guilty by reason of insanity."

Arguing that "Jones' evidence of insanity was weak at best" and insignificant in comparison to Jones' confession, the Commonwealth contends the exclusion of Dr. Twining's testimony was harmless. We disagree. The record contains a proffer of Dr. Twining's expected expert witness testimony and her written report. This proffer indicates that Dr. Twining, who examined Jones pursuant to a circuit judge's order, was prepared to testify concerning Jones' mental state at the time of the offense. Dr. Twining would have testified that Jones' illness made her unable to understand the nature and consequences of her acts and unable to understand right from wrong.

Dr. Twining's report detailed Jones' history of psychiatric treatment, including treatment at Eastern State and Maryview Psychiatric Hospitals. The report also disclosed that Jones had suffered at least two "catatonic episodes." Dr. Twining reported

that Jones "suffers from an Atypical Depression with Psychotic Features, Post-Traumatic Stress Disorder, a Dissociative Disorder and a Personality Disorder which renders her mentally incompetent in times of extreme stress."  The portion of the report styled "Mental State at Time of Offense" and the proffer of Dr. Twining's expected testimony clearly establish that Dr. Twining could have provided an evidentiary basis upon which the jury might have found that Jones was insane at the time of the offense.[1]  See Shifflett v. Commonwealth, 221 Va. 760, 769, 274

---

[1]In deciding whether a person can be criminally insane yet intend to commit a criminal act, the Supreme Court stated the following:

> On the surface, there appears to be a blatant inconsistency in concluding, as we do, that a person may be criminally insane when shooting another, and thus avoid full criminal sanctions, and yet that same individual can be denied insurance coverage because he "intended" to shoot his victim.  A more careful analysis, however, will reveal there is no inconsistency at all.
>
> In the law, there are many situations in which a person may intentionally injure or kill another and not be subject to criminal punishment.  For example, an individual may kill in self-defense.  The executioner may kill with the sanction of the State.  A soldier may injure or kill under rules of combat.  This conduct is intentional, but it is also excusable.  Likewise, an individual may be excused from penalty if he is insane at the time he commits a criminal act.  As here, he may do the act with every intention of consummating it, but when it is shown that he was mentally ill, he is excused from the imposition of the usual sanctions.

Johnson v. Insurance Co. of N. America, 232 Va. 340, 348, 350 S.E.2d 616, 620-21 (1986).

S.E.2d 305, 310 (1981) (noting that '[i]n Virginia . . . insanity is an affirmative defense that the defendant must establish to the satisfaction of the fact finder").  Our Supreme Court has "generally recognized that it is advisable to adduce expert testimony to better resolve such a complex problem [as insanity]."  Id.  Furthermore, the opinion of an expert witness often "carries great weight with the jury and could very well have been the decisive factor in their minds in determining the defendant's guilt."  Callahan v. Commonwealth, 8 Va. App. 135, 140, 379 S.E.2d 476, 479 (1989).  We cannot say from this record that "the error did not affect the verdict."  Lavinder v. Commonwealth, 12 Va. App. 1003, 1005, 407 S.E.2d 910, 911 (1991) (en banc).

Accordingly, we reverse the convictions and remand for a new trial.

Reversed and remanded.