605 S.E.2d 337

William WHITE, Jr.

v.

COMMONWEALTH of Virginia.

Record No. 2174–03–2.

Court of Appeals of Virginia,
Richmond.

Nov. 30, 2004.

430

---

(W. William Robinson, III; Hudson, Robinson & Newsome, PLLC, on brief), for appellant. Appellant submitting on brief.

Robert H. Anderson, III, Senior Assistant Attorney General (Jerry W. Kilgore, Attorney General, on brief), for appellee.

Present: FITZPATRICK, C.J., ELDER and BUMGARDNER, JJ.

ELDER, Judge.

William White, Jr., (appellant) appeals from his convictions for first-degree murder and assault and battery on a police officer. On appeal, he contends the trial court erroneously (1) denied his pretrial motion for a continuance; (2) granted the Commonwealth's motion to preclude him from offering evidence relevant to an insanity defense; and (3) denied his post-trial motion for a mental evaluation.[1] We hold the trial court's exclusion of all evidence related to appellant's sanity was error, and we reverse and remand for a new trial without reaching appellant's other assignments of error.

## I.

## BACKGROUND

On March 29, 2002, appellant stabbed and killed Mark Hulo and fled the scene of the murder. On the afternoon of March 30, State Trooper K.W. Spencer spotted appellant walking backwards on Interstate 95. Appellant was wearing a white fur coat, no shirt, red tights, and yellow shorts. Believing appellant might be the perpetrator in Hulo's murder, Trooper Spencer called for backup and took appellant into custody. While Trooper Spencer was attempting to subdue appellant, appellant hit him "several times in the chest and face area."

Appellant was arrested for the instant offenses and taken to the Southside Regional Jail. His court-appointed attorney moved for a psychiatric evaluation to determine both whether he was sane at the time of the offense and whether he was competent to assist in his own defense. The trial court

---

1. In granting appellant's petition for appeal on these issues, we also directed the parties to address "the impact on appeal" of appellant's entry, with the trial court's and the Commonwealth's consent, of a conditional plea of *nolo contendere* under Code § 19.2–254. The Commonwealth adheres to the position it took at trial that a proper interpretation of the guilty plea statute permits entry of a conditional plea of *nolo contendere*. We hold that this concession has become the law of the case, binding on appeal, and that we need not consider this issue on its merits.

appointed William D. Brock, a licensed clinical psychologist, to evaluate appellant.

Dr. Brock indicated appellant reported "rather heavy abuse of cocaine, alcohol, and marijuana, as well as occasional use of crack cocaine." Dr. Brock concluded appellant "[met] the minimum criteria to be considered competent to stand trial."

On the issue of appellant's sanity at the time of the offense, Dr. Brock opined as follows:

*By all indications, [appellant] was, indeed, experiencing symptoms of a psychosis at the time of the offenses for which he currently stands charged.* He was diagnosed and briefly treated for such symptoms [while living in Louisiana] several months prior [to] the offense and apparently, against medical advice, discontinued the antipsychotic medication. Without benefit of the Haldol which had been prescribed, [appellant] also returned to using large amounts of cocaine, a substance that appears likely to have been the cause of his psychotic symptoms to begin with and which likely exacerbated his symptoms....

*While the evidence would suggest that [appellant] seems to meet the threshold criteria for an insanity defense, several factors are contraindicative of a viable insanity defense.* First, [appellant's] psychotic symptoms appear to have either been the result of or ... exacerbated by (most likely the former), his voluntary and excessive use of cocaine. An altered mental status resultant from voluntary ingestion of illegal substances does not qualify as grounds for an insanity defense. Second, while most likely psychotic at the time of the offense, [appellant] made significant efforts to not be identified or get caught.... All these efforts indicate that [appellant], despite his psychotic symptoms, knew that his actions were wrong and punishable under the law. Thus, while experiencing a probable drug-induced psychosis at the time of the offense, his understanding of right and wrong was not diminished.

Given these conclusions, it is the opinion of this examiner that while there may be some basis for mitigation at the

time of sentencing based on mental health issues, there is not a significant case for raising an insanity defense.

(Emphasis added). Appellant subsequently asserted his intent to argue he was insane when he committed the charged crimes, and the Commonwealth filed a motion *in limine* to exclude any evidence of insanity.

On the date scheduled for trial, appellant moved for a continuance, alleging, *inter alia*, that he had been unable timely to consult with a "Dr. Skinner," a mental health professional about whom appellant had told his attorney. Appellant's attorney made contact with Joseph Skinner, a licensed clinical social worker (L.C.S.W.), at the end of the previous day. He confirmed that Joseph Skinner had seen appellant on multiple occasions. He also obtained "the notes from the jail where [Joseph Skinner] discuss[es] [appellant's] mental problems." Those notes were marked filed by the court during the argument on the continuance motion. The notes documented Skinner's treatment of appellant, the efforts of other medical personnel to adjust appellant's medication, and appellant's efforts to cope with his mental disorder. They also documented Skinner's conclusion that appellant "has a religious preoccupation [with] visual and auditory hallucinations."

After appellant's counsel introduced Skinner's notes into evidence, appellant's counsel made apparently conflicting statements about the substance of Skinner's expected testimony. According to the transcript of the motion hearing, counsel stated first that Skinner "advised me that his opinion of my client's mental ability was *entirely of that of* [sic] the expert who had been appointed in this case[, Dr. Brock]." (Emphasis added). However, on the same page of the transcript, counsel argued, "I now have a social worker who is *differing severely* from Dr. Brock's evaluation. And I would ask for a continuance to be able to investigate the matter further." (Emphasis added). Counsel subsequently argued about "the *absolute divergence* of the two opinions" of Dr. Brock and Mr. Skinner. (Emphasis added).

Appellant said that, under the Virginia Code, Skinner, as a licensed clinical social worker, was not authorized "to render expert opinion on legal [inaudible] under the Virginia Code." However, he proffered as follows:

> [Mr.] Skinner advised me that he could render a professional opinion, and I did fax him a copy of the rules, that his opinion would be that at the time of the incident [appellant] believed that God's law superseded man's law, and therefore what he did was not wrong. And, that would be his testimony if he was allowed to give an opinion.

The trial court said, "But, you have no established authority that would permit him to testify to an opinion regarding [appellant's] sanity at the time of the offense." Appellant's counsel responded,

> That's correct. However, it would seem that considering the amount of time that Dr. Brock spent with [appellant], which was fairly short compared to the time [Mr.] Skinner spent with [appellant] which was fairly extensive, that it would be a situation where the absolute divergence of the two opinions would be a situation where possibly another evaluation should be done in which Dr. Brock would be given [Mr.] Skinner's notes. Or, maybe another person entirely appointed to do a second evaluation based upon this evidence.

The trial court denied appellant's continuance motion and proceeded to consider the Commonwealth's motion to preclude appellant from presenting an insanity defense. Appellant proffered the testimony of various lay witnesses who would give factual testimony about appellant's mental status (1) before he left Louisiana for Virginia, where he committed the instant offenses, and (2) after he was incarcerated in Virginia for those offenses. Appellant's former roommate in Louisiana, Troy Whidbee, was prepared to testify that before appellant left for Virginia, he said he believed "God needed soldiers" and that "someone was out to get him." Appellant's mother, who also lived in Louisiana, was prepared to testify that, prior to appellant's arrival in Virginia, he had received

two traffic citations for driving at a high rate of speed with his lights off. She was also prepared to testify that appellant reported "hearing voices," both before he came to Virginia and after he was incarcerated, and that he said he believed "God and the devil were fighting over his soul." Correctional Officer Arithea Hicks was prepared to testify, and in fact did so at sentencing, that appellant began to tell her "a few times a week," "early on in his incarceration," that he was hearing voices. Hicks said appellant "would stop [complaining about the voices] for awhile and not need any help and then it would start again." Appellant made similar reports to at least one other correctional officer.

Appellant argued that Skinner's testimony would include appellant's reports

that he had been hearing the voices of what he believed to be God, both before and after the incident and at times when he was not taking drugs. And, obviously he had not been taking [illegal] drugs while he was at the jail. That [Skinner] believed [appellant] had a type of psychosis that was a religious obsession.

Appellant's counsel also argued Dr. Brock's opinion supported his position to the extent Dr. Brock opined appellant was in fact suffering from psychosis, although he opined it was induced by appellant's voluntary ingestion of legal and illegal drugs and, thus, did not qualify as legal insanity. Counsel argued further,

I believe here, Your Honor, because of that [aspect of Dr. Brock's opinion,] if the defense can produce evidence that shows that [appellant] was having the same symptoms, that he was having directly prior to the incident, that [he] was hearing voices and indeed he was having those symptoms while he was not under the influence of drugs, i.e. prior to the event being testified to by his family members, more importantly after the event when he was incarcerated without having access to drugs, both by the guards and more importantly by Dr. Skinner.... Obviously, Dr. Skinner, as the court has ruled[,] is not qualified to give an expert

opinion. However, I don't think I would characterize him as a true lay witness either. Obviously, someone off the street is not exactly the same as a doctor who is well versed in mental problems and diagnosis of [Axis] 'I' and that type of thing. Dr. Skinner is simply someone who has not been trained for forensic evaluations. He doesn't make the decisions of insanity. But, ... he is talking to [appellant] ... [a]nd I think that significantly distinguishes this case from the [*McCullough*] case in which those kinds of facts were not present.

... [C]onsidering that ... the defense of insanity ... is an essential key issue in this case and we're trying a man for first degree murder and it would seem that to preclude even the admission of the evidence, to preclude that from the jury instructions severely prejudices [appellant].

The Commonwealth argued that the only expert testimony was Dr. Brock's opinion that appellant was legally sane at the time of the offenses and that the lay witness testimony was of only marginal relevance because it did not involve appellant's mental status at the time of the offense. It also argued that appellant's claim that his behavior before he came to Virginia indicated he suffered from psychosis even when he was not ingesting illegal drugs was flawed because appellant told Dr. Brock he had been ingesting cocaine and various other drugs regularly for at least 30 days prior to the instant offense. As a result, it argued, appellant presented insufficient evidence to "jump over the hurdle of the voluntary intoxication."

The trial court granted the Commonwealth's motion *in limine*, ruling "that the introduction of the proffered testimony would not rise to the level of that which would warrant admissibility on the issue of insanity at the time of the offense."

Appellant then entered guilty pleas conditioned on his right to appeal the court's rulings on various pretrial motions.

At appellant's sentencing, Skinner testified that appellant, who was 28 at the time of his arrest, reported he was "probably" in his "early twenties or late teens" "when he

started to hear the voices and to feel different." Appellant's mother testified he began behaving strangely "around the last part of '98," when he was 24 years old. The trial court noted appellant's statement in the presentence report that he did not start using cocaine until 2000 or 2001.

Correctional Officer David Allen testified that on May 19, 2003, when appellant had been in custody for seven weeks, he removed his clothing except for his tennis shoes and refused requests to clothe himself. He destroyed the television and cable box, "wrapped his arms," and "armed himself with shards of glass from the t.v." He damaged the doors and walls and threatened the staff before medical personnel arrived to "talk to him." Other evidence established that appellant reported visual and auditory hallucinations during this period of time and that he was subsequently hospitalized and medicated, after which he reported an improvement in his psychiatric symptoms.

The court subsequently sentenced appellant to five years for the assault and battery of a law enforcement officer and life for the murder conviction. Appellant then noted this appeal.

## II.

## ANALYSIS

### A.

### ADMISSIBILITY OF EVIDENCE OF INSANITY IN GUILT PHASE

█ Appellant contends the trial court erroneously granted the Commonwealth's motion to preclude him from offering evidence relevant to an insanity defense. Upon review of the proffered evidence, we agree that exclusion of evidence of appellant's sanity was reversible error.

█ "[I]nsanity is an affirmative defense that the defendant must establish" by a preponderance of the evidence. *Shifflett v. Commonwealth,* 221 Va. 760, 769, 274 S.E.2d 305, 310

(1981); *see Taylor v. Commonwealth,* 208 Va. 316, 322, 157 S.E.2d 185, 189–90 (1967).

▮▮▮ " '[T]he actual *M'Naghten* test for insanity, stated in the disjunctive, is the rule in Virginia.' " *Herbin v. Commonwealth,* 28 Va.App. 173, 181, 503 S.E.2d 226, 230 (1998) (quoting *Price v. Commonwealth,* 228 Va. 452, 459, 323 S.E.2d 106, 110 (1984)). Under this rule,

> "it must be clearly proven that, at the time of the committing of the act, the party accused was labouring [sic] under such a defect of reason, from *disease of the mind,* as not to know the nature and quality of the act he was doing; or, if he did know it, that he did not know he was doing what was wrong."

*Price,* 228 Va. at 457–58, 323 S.E.2d at 109 (quoting *M'Naghten's Case,* 10 Cl. & F. 200, 8 Eng. Rep. 718, 722–23 (1843) (emphasis added)). The Supreme Court of Virginia has explained the application of both facets of the test as follows:

> "The first portion of M'Naghten relates to an accused who is psychotic to an extreme degree. It assumes an accused who, because of mental disease, did not know the nature and quality of his act; he simply did not know what he was doing. For example, in crushing the skull of a human being with an iron bar, he believed that he was smashing a glass jar. The latter portion of M'Naghten relates to an accused who knew the nature and quality of his act. He knew what he was doing; he knew that he was crushing the skull of a human being with an iron bar. However, because of mental disease, he did not know that what he was doing was wrong. He believed, for example, that he was carrying out a command from God."

*Id.* at 459–60, 323 S.E.2d at 110 (quoting Charles Torcia, *Wharton's Criminal Law* § 100, at 9 (14th ed.1979)).

▮▮▮ Evidence of past acts of the accused, whether criminal or not, are admissible if they have a tendency to show the mental condition of the accused at the time of the commission of the charged offense. *Farris v. Commonwealth,* 209 Va. 305, 307, 163 S.E.2d 575, 576 (1968).

"While lay witnesses may testify to the attitude and demeanor of the defendant, '[l]ay witnesses cannot express an opinion as to the existence of a particular mental disease or condition.'" *Herbin,* 28 Va.App. at 183, 503 S.E.2d at 231 (quoting *Mullis v. Commonwealth,* 3 Va.App. 564, 573, 351 S.E.2d 919, 925 (1987)) (holding lay witness could not describe defendant's actions as "paranoid" because such a description might suggest to the jury that defendant had been diagnosed as "paranoid"). Thus, "[a]lthough sanity or insanity may be established by lay witnesses, it is generally recognized that it is advisable to adduce expert testimony to better resolve such a complex problem." *Shifflett,* 221 Va. at 769, 274 S.E.2d at 311. Applying these principles in *McCulloch v. Commonwealth,* 29 Va.App. 769, 514 S.E.2d 797 (1999), we upheld the trial court's exclusion of lay testimony—"testimony of lay witnesses who observed [McCulloch's] behavior, demeanor, and actions"—on the issue of sanity because *"no medical evidence* supporting an insanity defense was introduced, and the lay testimony defendant proffered was insufficient to establish a *prima facie* case for an insanity defense." *Id.* at 775, 514 S.E.2d at 800 (emphasis added).

Here, appellant conceded that Joseph Skinner—a licensed clinical social worker—lacked "train[ing] for forensic evaluations," "doesn't make the decisions of insanity," and thus, could not offer an opinion as to whether appellant was legally insane at the time of the instant offenses. However, counsel noted the opinion of Dr. William Brock—the licensed clinical psychologist appointed by the court expressly for the purpose of evaluating, *inter alia,* appellant's sanity at the time of the offense—that appellant "seems to meet the threshold criteria for an insanity defense" because he was "most likely psychotic" at the time of the killing. Although Dr. Brock opined that the psychosis "most likely" resulted from "[appellant's] voluntary excessive use of cocaine," which would not have supported an insanity defense, *see, e.g., Herbin,* 28 Va.App. at 184, 503 S.E.2d at 231 (holding temporary mental defect caused by voluntary ingestion of drugs, whether or not pursuant to an addiction, is insufficient to establish insanity but that

long-term and severe drug abuse may cause mental defect or disease that can serve as basis for insanity defense), Dr. Brock conceded that appellant's cocaine ingestion could merely have exacerbated an underlying mental disorder.

Appellant argued that Skinner, although not an expert on the issue of sanity, nevertheless had significant training and experience in the diagnosis and treatment of mental health disorders and, thus, would testify as more than a mere lay witness. Appellant had provided Skinner with "a copy of the rules," and Skinner indicated, based on his review of the rules, that he could provide a "professional opinion." Appellant had reported to Skinner "that he had been hearing the voices of what he believed to be God, both before and after the incident and at times when he was not taking drugs." Skinner "believed [appellant] had a type of psychosis that was a religious obsession" and that "at the time of the incident [appellant] believed that God's law superseded man's law, and therefore [that] what he did was not wrong." The court had before it notes of Skinner's treatment of appellant at the jail from April through November 2002. Those notes detailed appellant's repeated reports of hearing voices, including the voices of God and the devil, and supported counsel's proffer regarding Skinner's expected testimony.[2]

The trial court concluded that Skinner's testimony about appellant's mental condition "would not rise to the level of that which would warrant admissibility on the issue of insanity at the time of the offense," holding in essence that the testimony would not be relevant because he could not render an opinion

---

2. We note that what may be relevant to a trial court's threshold determination of whether an accused is entitled to present an insanity defense may be different from what will be admissible at trial to prove or disprove that defense. *Cf. Pritchett v. Commonwealth,* 263 Va. 182, 187, 557 S.E.2d 205, 208 (2002) (holding error to exclude proffered expert testimony that defendant was mentally retarded and that his mental retardation rendered him susceptible to suggestive police interrogation resulting in confession "so long as the expert does not opine on the truth of the statement at issue" because "such testimony [would] improperly invade[ ] the province of the jury to determine the reliability of a witness").

on the issue of sanity. Appellant conceded in the trial court that Skinner was not qualified to render an opinion on the issue of sanity.[3] Thus, we conclude the trial court did not err in preventing Skinner from testifying to his opinion that appellant was legally insane or did not know the difference between right and wrong when he committed the charged offenses. Nevertheless, we hold the trial court abused its discretion in excluding the remainder of Skinner's proffered testimony, along with the additional proffered lay testimony, to the extent such testimony could have established a non-drug-induced cause of appellant's psychosis, and other relevant evidence bearing on the issue of appellant's mental state at the time of the offense.

Code § 19.2–169.5 governs the appointment of a qualified mental health expert or experts to evaluate the sanity of a defendant who establishes "probable cause to believe that the defendant's sanity will be a significant factor in his defense and that the defendant is financially unable to pay for expert assistance." Code § 19.2–169.5(A). That code section provides that any expert so appointed "shall be (a) a psychiatrist, a clinical psychologist, or an individual with a doctorate degree in clinical psychology who has successfully completed [certain approved] forensic evaluation training . . . and (ii)[is] qualified by specialized training and experience to perform forensic evaluations." *Id.; cf.* Code § 19.2–264.3:1 (governing appointment of mental health expert for defendant "charged with or convicted of capital murder," containing same requirements for appointment as Code § 19.2–169.5). A defendant who "intends (i) to put in issue his sanity at the time of the crime charged and (ii) to present testimony of an expert to support his claim on this issue at trial . . . shall give notice in writing to the attorney for the Commonwealth. . . ." Code § 19.2–168. The Supreme Court has held that where an accused gives notice of such intent, the trial court "ha[s] the inherent power to require [the accused] to be examined [on behalf of the

---

3. We assume without deciding, for purposes of this appeal only, that his concession was an accurate statement of the law.

Commonwealth] ... in order that his examiners might report their opinions as to his sanity at the time of his alleged crimes and *testify* to such opinion [before the jury] if called by the Commonwealth as rebuttal witnesses." *Shifflett,* 221 Va. at 769, 274 S.E.2d at 311 (emphasis added). The legislature subsequently codified this right at Code § 19.2–168.1. *See* 1982 Va. Acts, ch. 653; 1986 Va. Acts, ch. 535. Experts appointed to aid the accused or the Commonwealth in addressing the issue of the accused's sanity at the time of the offense have been permitted to testify both that the accused "did not understand right from wrong, did not understand the nature, character and consequences of his acts committed on that date, and *was legally insane* " and that the accused *"was not psychotic or insane* on [the day of the offense], knew what he was doing at that time, and knew that it was wrong." [4] *Id.* at 764–65, 274 S.E.2d at 307–08 (emphases added); *see also Jones v. Commonwealth,* 28 Va.App. 444, 448–49, 506 S.E.2d 27, 29 (1998) (holding proffer of expected testimony of clinical psychologist that defendant's illness "made her unable to understand the nature and consequences of her acts and unable to understand right from wrong" and psychologist's written report that defendant suffered from various psychiatric disorders that "render[ed] her mentally incompetent in times of extreme stress" "clearly establish[ed] that [the psy-

---

4. Generally, neither lay nor expert witnesses are permitted to give testimony on an ultimate issue in a criminal case because allowing such testimony would "invade the province of the jury." *See, e.g., Strawderman v. Commonwealth,* 200 Va. 855, 859–60, 108 S.E.2d 376, 379–80 (1959); *see also* 1993 Va. Acts, ch. 909 (codified at § 8.01–401.3 (partially abrogating rule in civil cases, as to testimony about purely factual rather than legal matters, and leaving intact "the exceptions to the 'ultimate fact in issue' rule recognized in the Commonwealth prior to enactment of this section")). However, as discussed in the text, the Supreme Court has allowed expert testimony on the precise issue of whether a defendant was "legally sane" or "legally insane" at the time of the charged offense. *See Shifflett,* 221 Va. at 769, 274 S.E.2d at 311. Commentator Charles Friend has observed that "opinion [testimony] has been received on questions of, *inter alia,* mental condition, ... based upon the practical difficulty of conveying such information to the jury in any other form." Charles E. Friend, *The Law of Evidence in Virginia* § 17–3(a), at 643 (6th ed.2003).

chologist] could have provided an evidentiary basis upon which the jury might have found that [the defendant] was insane at the time of the offense").

Our case law clearly establishes that lay testimony relevant to the issue of legal sanity also is admissible as long as the evidence as a whole is sufficient to establish a *prima facie* case for an insanity defense. *See McCulloch,* 29 Va.App. at 775, 514 S.E.2d at 800; *see also People v. Scala,* 128 Misc.2d 831, 491 N.Y.S.2d 555, 562–63 (N.Y.Sup.Ct.1985) (upholding admissibility, in cases involving insanity defense, of *relevant* testimony from neurologists and other "nonpsychiatric physicians" as well as *"properly qualified licensed* nonphysician mental health professionals" such as *licensed* clinical social workers (emphasis added)). Here, assuming Skinner's testimony would have been insufficient on its own to prove insanity, when coupled with Dr. Brock's testimony and the additional lay testimony, it would have allowed appellant to establish a *prima facie* case for an insanity defense.

Dr. Brock opined that, "[b]y all indications, [appellant] was, indeed, experiencing symptoms of a psychosis at the time of the offenses" and was "most likely psychotic" at that time. As a result, Dr. Brock wrote "that [appellant] seems to meet the threshold criteria for an insanity defense." Dr. Brock concluded appellant's psychosis resulted from the voluntary ingestion of illegal drugs, which he said would have disqualified appellant from asserting an insanity defense, but he conceded appellant's cocaine ingestion could merely have exacerbated an underlying mental disorder. Appellant was entitled to offer evidence that his psychosis resulted from an underlying mental disorder rather than his voluntary ingestion of illegal drugs. Such evidence was highly relevant and, if believed by the fact finder, would have permitted the fact finder to reject the conflicting portion of Dr. Brock's opinion and to reach an independent conclusion on the ultimate issue of appellant's sanity at the time of the offenses.

Appellant attempted to offer such testimony through Mr. Skinner. While Skinner was not able, based on appellant's

concession, to testify as to the ultimate issue of insanity, his proffered testimony provided a basis to disregard Dr. Brock's legal conclusion that appellant's voluntary drug use precluded an insanity defense. Evidence admitted at the sentencing hearing confirmed that Skinner had both training as a licensed clinical social worker and experience as the director of an outpatient mental health services organization for a period of twenty-five years. Skinner met appellant within two weeks of the instant offenses and counseled him in jail on a regular basis for the six months preceding the date scheduled for trial; the notes from those counseling sessions were admitted into evidence and were available to the court when it made its ruling. Skinner could not testify, based on appellant's concession, that appellant was insane when he committed the offense or that he did not know the difference between right and wrong at that time. However, Skinner should have been permitted to testify about any relevant symptoms that he observed and that appellant reported while Skinner was treating appellant during his incarceration, including appellant's ongoing reports that he heard the voices of God and others, as well as other issues within Skinner's area of competence not touching on the ultimate issue of sanity. Other proffered evidence, including the testimony of appellant's mother, would have supported a finding that appellant began hearing voices before he became a heavy user of cocaine. This evidence, taken as a whole, if believed by the trier of fact, would have negated Dr. Brock's opinion that appellant's psychosis did not qualify him for an insanity defense because it resulted from the voluntary ingestion of illegal drugs.

Because appellant proffered relevant evidence that, if believed by the trier of fact, would have permitted the fact finder to infer he was legally insane at the time of killing, we hold the trial court committed reversible error in granting the Commonwealth's motion to exclude all evidence related to appellant's mental condition and sanity at the time of the offense. Despite Skinner's inability to testify that appellant was "insane" or believed "what he did was not wrong," the

testimony outlined above was highly probative of the issue of appellant's sanity, and its exclusion was reversible error.

## B.

### MOTION FOR CONTINUANCE AND POST-TRIAL MOTION FOR DETERMINATION OF SANITY

Appellant also challenges the trial court's denial of his motion for a continuance and for a post-trial determination of sanity. Because we reverse and remand based on the trial court's erroneous exclusion of evidence pertaining to appellant's mental state at the time of the offense, we do not reach these other issues in this appeal.

## III.

For these reasons, we hold the trial court's exclusion of all evidence related to appellant's sanity was error, and we reverse and remand for a new trial without reaching appellant's other assignments of error.

*Reversed and remanded.*

BUMGARDNER, J., dissenting.

I dissent because I conclude the trial court did not err in granting the motion *in limine* that excluded the proffered evidence of insanity. The trial court limited the exclusion to the guilt phase, and the defendant did present the evidence at the sentencing phase. The evidence that the defendant proffered did not establish a *prima facie* defense of insanity. Had the defendant pled not guilty and proceeded to trial on this evidence, he would not have been entitled to instructions on the insanity defense.

The defendant proffered the opinion of his expert, Dr. William D. Brock, that the defendant did not meet the criteria necessary for an insanity defense. The Commonwealth and the defense agreed that was his opinion. The defendant proffered testimony from a licensed clinical social worker, Joseph W. Skinner. The defendant conceded at trial and on

appeal that Skinner was not an expert qualified to give an opinion about legal insanity in a criminal case. The defendant proffered other lay testimony about the defendant's conduct before and after the killing. Skinner and the other lay witnesses testified the defendant said he heard God speaking to him.

In *McCulloch v. Commonwealth*, 29 Va.App. 769, 514 S.E.2d 797 (1999), the defendant's expert evidence showed the defendant was sane. That evidence was not offered, but the defendant sought to prove insanity through lay testimony about observed behavior, demeanor, and actions. This Court upheld the trial court's exclusion of the lay testimony because it was insufficient to establish a *prima facie* case for insanity. *Id.* at 775, 514 S.E.2d at 800. The facts of that case are similar to those in this case.

In this case, the expert evidence concluded the defendant was sane. The lay testimony recited observed incidents of bizarre behavior and conduct. That testimony, on its own, was insufficient to present a *prima facie* case of insanity. As in *McCulloch*, it did not establish a mental disease or defect. The defendant did not change the result by offering the expert's opinion in this case. Lay testimony might refute the factual basis of the expert's opinion that the defendant was not insane, but that lay testimony still did not prove the existence of a mental disease or defect.

The evidence in this case failed to raise an issue of insanity. The only witness qualified to state an opinion concluded the defendant did not meet the criteria for criminal insanity. The other witnesses could only recite observed behavior. "While lay witnesses may testify to the attitude and demeanor of the defendant, 'lay witnesses cannot express an opinion as to the existence of a particular mental disease or condition.' *Mullis v. Commonwealth*, 3 Va.App. 564, 573, 351 S.E.2d 919, 925 (1987) (citing *Phillips v. Stewart*, 207 Va. 214, 220, 148 S.E.2d 784, 789 (1966))." *Herbin v. Commonwealth*, 28 Va.App. 173, 183, 503 S.E.2d 226, 231 (1998).

While claiming to accept the fact that Skinner was not qualified to give an opinion, the defendant elevates his testimony to that of an expert. In his brief the defendant states, "Joseph Skinner, while not qualified to give a forensic opinion as to legal insanity in a criminal case, would have provided his opinion as to the rationale behind the Defendant's actions due to his belief that he was acting on orders from God." He argues that Skinner provides an opinion as to the rationale behind the defendant's action. However, Skinner's testimony was only admissible as a lay witness who could recite facts observed on issues in dispute.

The majority accepts the defendant's approach and permits a witness, who concedes he is not qualified to give an opinion, to do just that. If the defense is to refute its own opinion evidence from a qualified expert, the majority must treat Skinner as having the qualifications of an expert. Unless Skinner's testimony is treated as a qualified opinion, the defendant has no evidence that the defendant suffered from a mental disease. To overcome the insufficiency of the defendant's proffered evidence, the majority raises the licensed clinical social worker to the new status of "quasi expert"; in fact, it elevates his statements to the degree that they overrule the opinion of the one witness qualified to state an opinion.

The defendant maintains he would have been entitled to instructions on the insanity defense based on the evidence proffered. No qualified witness testified that the defendant labored under a defect of reason from a disease of the mind so that he did not know the nature and consequences of his act, or if he did know, that his act was wrong. *Price v. Commonwealth*, 228 Va. 452, 458, 323 S.E.2d 106, 109 (1984). The only qualified testimony stated the opposite. To grant insanity instructions on the basis of the evidence proffered by the defendant would be to cast the jury onto a sea of speculation. The recital of this defendant's behavior did not provide a basis for a jury to conclude the defendant was suffering from a mental disorder or disease that caused him to be unable to

distinguish right from wrong.  Accordingly, I would affirm the trial court.