COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Fitzpatrick, Judges Benton, Elder, Bumgardner, Frank, Humphreys,
            Clements, Felton, Kelsey, McClanahan and Haley
Argued at Richmond, Virginia


WILLIAM WHITE, JR.
                                                              OPINION BY
v.      Record No. 2174-03-2              JUDGE RUDOLPH BUMGARDNER, III
                                                              JULY 19, 2005
COMMONWEALTH OF VIRGINIA


UPON REHEARING EN BANC

FROM THE CIRCUIT COURT OF GREENSVILLE COUNTY
Robert G. O'Hara, Jr., Judge

W. William Robinson, III (Hudson & Robinson, PLLC, on brief), for
appellant.

Robert H. Anderson, III, Senior Assistant Attorney General
(Jerry W. Kilgore, Attorney General, on brief) for appellee.


William White, Jr., entered a conditional plea of *nolo contendere* to first-degree murder

and assault and battery on a police officer.[1]  He appeals his convictions maintaining the trial

court erred in denying his motion for a continuance, in granting the Commonwealth's motion

*in limine,* and in denying a motion that the defendant be confined in a mental hospital, pursuant

to Code § 19.2-176(A), rather than sentenced to the penitentiary.

A panel of this Court held the trial court erred in granting the motion *in limine*, reversed,

and remanded the case.  White v. Commonwealth, 44 Va. App. 429, 605 S.E.2d 337 (2004).

Upon rehearing *en banc*, a majority of the Court affirms the convictions.

---

[1] In granting the appeal, we directed the parties to address the impact of a conditional
plea of *nolo contendere* under Code § 19.2-254.  The Commonwealth maintained the position it
took at trial that the statute permits a conditional plea of *nolo contendere*.  Accordingly, we do
not consider that issue on the merits.

After the defendant's car broke down in North Carolina, he paid Elkton Giliken $1,300 to drive him to New York. When they reached the junction of I-95 and U.S. 301 in Greensville County, the defendant directed Giliken to a motel. Giliken abandoned the defendant and called the police after the defendant said he was going to kill someone, pulled out a knife, and got out of the car. Later that night, Mark Hulo was found in his motel room cut and stabbed twenty-seven times of which four wounds were fatal. A friend of the victim, who was staying in an adjacent room, saw a man flee the scene.

The next day, a state trooper encountered the defendant walking along the interstate and warned him to get off that highway. The trooper later arrested the defendant because he was still on the interstate right of way as he backed up an exit ramp. During the arrest, the defendant hit the trooper in the chest and face. The investigation connected the defendant to the local motel, and he was arrested for the murder. DNA testing proved the victim's blood was on the defendant's clothing.

The general district court granted a defense motion for psychiatric evaluation. It appointed William D. Brock, Ph.D., a licensed clinical psychologist, as the defendant's expert and directed Dr. Brock to determine competency to stand trial and sanity at the time of the offense. He reported to the court that the defendant was competent to stand trial and to the defendant that he was not insane at the time of the offense.

Two months before the trial date, defense counsel filed notice of intent to present evidence of insanity, Code § 19.2-168. A month later, he moved to have Dr. Brock re-evaluate the defendant in light of additional information about his treatment in a Louisiana mental hospital. The trial court ordered an expedited re-evaluation. The doctor reported that the new data did not change his initial opinion that the defendant was sane at the time of the offense. The

Commonwealth filed a motion *in limine* citing Dr. Brock's opinion and maintaining the defendant would not have sufficient evidence to raise the defense of insanity.

On the morning of trial, December 12, the defendant moved for a continuance on two grounds: he had not received a transcript of the preliminary hearing until the night before, and he had only been able to contact Joseph Skinner, a licensed clinical social worker, the night before. Counsel explained that from the beginning of his investigation, he had been trying to locate a "Dr. Skinner" who had seen his client at the jail. He assumed Dr. Skinner was Dr. Marvin Skinner, and only four days before learned he should have been looking for Joseph Skinner. Skinner was not a doctor but a licensed clinical social worker who had seen the defendant ten times between April and September. Skinner believed the defendant "has a religious preoccupation [with] visual and auditory hallucinations."

The defendant acknowledged Skinner was not qualified to render an expert opinion on legal sanity, but he proffered:

> Dr. Skinner advised me that he could render a professional
> opinion, and I did fax him a copy of the rules, that his opinion
> would be that at the time of the incident [the defendant] believed
> that God's law superseded man's law, and therefore what he did
> was not wrong. And, that would be his testimony if he was
> allowed to give an opinion.

The defendant argued the conflict between the opinions of Dr. Brock and Skinner "possibly" called for another evaluation by Dr. Brock or, alternatively, a separate evaluation.

The trial court denied the continuance on both grounds and immediately addressed the pending motion *in limine*. The parties agreed that Dr. Brock would opine that the defendant had a drug-induced psychosis but "in that psychosis he was still able to determine the difference between right and wrong." The defendant had no other expert opinion to offer.

The defendant proffered Skinner's testimony and interview notes that the defendant heard voices, which he believed to be from God, both before and after the stabbing. After the stabbing

- 3 -

the defendant was in jail and had no access to illicit drugs. The defendant also proffered the testimony of several lay witnesses who described the defendant's mental condition before coming to Virginia and while incarcerated awaiting trial.[2]

The defendant proffered that Skinner believed the defendant had a psychosis that was a religious obsession because he still heard voices when he was in jail and could not have been using illegal drugs. While acknowledging Skinner was not qualified as an expert, the defendant maintained he was more than a lay witness. "I don't think I would characterize him as a true lay witness either."

The defendant maintained Dr. Brock's opinion that the defendant was sane supported Skinner's belief that he was not sane. Defense counsel noted that Dr. Brock recognized the defendant suffered from a drug-induced psychosis and went on to explain his theory:

> I believe here, Your Honor, because of that if the defense can produce evidence that shows that my client was having the same symptoms, that he was having directly prior to the incident, that of was [sic] hearing voices and indeed he was having those symptoms while he was not under the influence of drugs, i.e. prior to the event being testified to by his family members, more importantly after the event when he was incarcerated without having access to drugs, both by the guards and more importantly by Dr. Skinner.

The defendant maintained the lay evidence showed the defendant heard voices when he was not on drugs thus Dr. Brock had no factual basis for concluding he was sane at the time of the

---

[2] The defendant's roommate in Louisiana would testify that the defendant believed "God needed soldiers" and that "someone was out to get him" before the defendant left to go to Virginia. His mother would testify that the defendant received two traffic citations in Louisiana for driving at a high rate of speed with his lights off, that he reported "hearing voices," and that he said he believed "God and the devil were fighting over his soul." A correctional officer would testify that defendant told her a few times a week, early in his incarceration, that he was hearing voices. She said the defendant "would stop [complaining about the voices] for awhile and not need any help and then it would start again." The defendant made similar statements to at least one other correctional officer.

offense. In essence, he argued the lay evidence discredited the factual basis of Dr. Brock's opinion the defendant was sane, which would permit a jury to find the defendant was insane.

The trial court ruled "that the introduction of the proffered testimony would not rise to the level of that which would warrant admissibility on the issue of insanity at the time of the offense," and granted the Commonwealth's motion *in limine.* It suggested the evidence might be appropriate in mitigation or extenuation, and the defendant presented it at the sentencing hearing.

The defendant then tendered a conditional plea of *nolo contendere*, the parties stipulated the evidence, and the trial court convicted. The trial court subsequently declined to commit the defendant to a mental hospital and sentenced him to life in prison for murder and to five years in prison for the assault and battery of a law enforcement officer.

"[I]nsanity is an affirmative defense that the defendant must establish" by a preponderance of the evidence. Shifflett v. Commonwealth, 221 Va. 760, 769, 274 S.E.2d 305, 310 (1981). Under the M'Naghten rule,

> "it must be clearly proved that, at the time of the committing of the act, the party accused was labouring under such a defect of reason, from disease of the mind, as not to know the nature and quality of the act he was doing; or, if he did know it, that he did not know he was doing what was wrong."

Price v. Commonwealth, 228 Va. 452, 457, 323 S.E.2d 106, 109 (1984) (quoting M'Naghten's Case, 10 Cl. & F. 200, 210, 8 Eng. Rep. 718, 722-23 (1843)).

McCulloch v. Commonwealth, 29 Va. App. 769, 775, 514 S.E.2d 797, 800 (1999), recapitulated the fundamental requirements of the defense of insanity:

> [The defendant] has the burden of affirmatively raising the issue of insanity and proving his mental disease or defect by a preponderance of the evidence. See Taylor v. Commonwealth, 208 Va. 316, 322, 157 S.E.2d 185, 189-90 (1967); Herbin v. Commonwealth, 28 Va. App. 173, 183, 503 S.E.2d 226, 231 (1998). Herbin stated that both facets of the M'Naghten test require a showing of a disease of the mind. "Although lay testimony may support a plea of insanity, 'it is generally

- 5 -

recognized that it is advisable to adduce expert testimony to better resolve such a complex problem.'" Herbin, 28 Va. App. at 183, 503 S.E.2d at 231 (quoting Shifflett v. Commonwealth, 221 Va. 760, 769, 274 S.E.2d 305, 311 (1981)).

In McCulloch, the trial court excluded lay testimony of the defendant's behavior, demeanor, and actions because the defendant presented no expert testimony that the defendant suffered from a disease of the mind. McCulloch sought to prove insanity through lay witnesses alone and did not proffer his expert's opinion that he was sane. This Court upheld the exclusion of the lay testimony because it was insufficient to establish a *prima facie* case for insanity. 29 Va. App. at 775, 514 S.E.2d at 800.

The lay testimony in McCulloch is similar to the lay testimony in this case. The defendant distinguishes McCulloch by stressing that the case recognized "in an appropriate case factual testimony alone may be sufficient to establish the defense." Id. He notes that he offered his expert's opinion that the defendant was sane because it established he suffered a psychosis. He also argues that Skinner, while not qualified to render an opinion on the issue of sanity, was more than a lay witness.

Dr. Brock issued his initial opinion of the defendant's mental state at the time of the offense June 5, 2002. He stated that by all indications the defendant was experiencing symptoms of a psychosis at the time of the offense. He had been treated for the symptoms but discontinued his anti-psychotic medication. Without benefit of that medicine, the defendant returned to the use of large amounts of cocaine. Dr. Brock felt cocaine likely caused the defendant's psychotic symptoms to begin with and exacerbated those symptoms.

The doctor hypothesized the defendant "seems to meet the threshold criteria for an insanity defense," but he rejected that thesis for two reasons. First, the psychotic symptoms were most likely the result of excessive use of cocaine or exacerbated by it. Second, while most likely psychotic at the time, the defendant made significant efforts to avoid detection. The doctor

- 6 -

concluded with his opinion: "Thus, while experiencing a probably drug-induced psychosis at the time of the offense, his understanding of right and wrong was not diminished."

Dr. Brock updated his initial opinion on November 19, 2002. He stated the additional medical records submitted by the defendant confirmed his earlier opinion that the defendant's "psychosis was almost surely the result of his substance abuse and not some other mental condition." The new information did not negate his initial evaluation of the defendant's "understanding of the nature and consequences of his actions or his understanding of right and wrong." The doctor repeated his conclusion that the defendant's drug-induced psychotic state "does not, in my opinion, meet the criteria necessary for an insanity defense."

Offering Dr. Brock's opinion in evidence was not a fact that would distinguish this case from McCulloch. Dr. Brock opined that the defendant was sane at the time of the offense though probably suffering a drug-induced psychosis because he understood the nature and consequences of his actions and understood right and wrong. The lay testimony might refute the factual basis underpinning the expert's opinion, but discrediting Dr. Brock's opinion did not prove the opposite was true.

Dr. Brock opined the defendant had a drug-induced psychosis. The defendant offered to prove he heard voices when he had no access to drugs. That lay testimony might refute the factual basis for a diagnosis of drug-induced psychosis, but it was not competent to provide proof of some other psychosis. The lay testimony did not provide an evidentiary basis for finding the existence of a mental disease or defect.

Dr. Brock rejected the hypothesis that the defendant met the threshold criteria for an insanity defense for two reasons. The lay testimony did not refute the factual basis for the second part of Dr. Brock's analysis that concluded the defendant's actions to avoid detection

showed he understood right from wrong.  The lay testimony did not provide an evidentiary basis for finding the defendant incapable of understanding his actions or telling right from wrong.

The lay testimony of the defense witnesses might undercut a factual basis for Dr. Brock opining the defendant suffered a drug-induced psychosis, but it was not competent to transform the professional evaluation of Dr. Brock into proof of the opposite evaluation.  Disproving one part of the factual basis for his opinion that the defendant did not "meet the criteria necessary for an insanity defense" did not establish a *prima facie* case upon which a jury could find the converse.

The defendant conceded in the trial court that Skinner was not qualified to render an opinion on the issue of sanity.  Expert witnesses are entitled to state opinions, but lay witnesses must recount facts.  See A Guide to Evidence in Virginia, Art. VII (2005); Charles E. Friend, The Law of Evidence in Virginia §§ 17-1, -4 (6th ed. 2003).  No "quasi-expert" category exists to permit a witness to give the type of non-opinion opinion that the defendant ascribed to Skinner.  In his brief the defendant states,

> While Mr. Skinner may not have been qualified to give a forensic opinion as to legal insanity, nothing should have precluded him from rendering his professional opinion regarding the Defendant's belief that prior to, during, and after the offense he was hearing voices; that the Defendant believed these voices to be orders from God and that God's law superceded man's law.

The defendant argued to the trial court that Skinner provided an opinion as to the rationale behind the defendant's action.  While claiming to accept the fact that Skinner was not qualified to state opinions, the defendant elevated his testimony to that of an expert.

Skinner was a lay witness who could only recite facts relevant to issues in dispute.  While the proffered evidence might permit the fact finder to disregard the defendant's expert who said the defendant was not insane, it would not permit a jury to conclude the opposite opinion was

proven. The defendant's evidence did not establish a *prima facie* showing that he met the M'Naghten test.

The term "*prima facie* case" is used in two different senses. It may mean simply that the evidence is "sufficient to get to the jury, or it may mean [that the evidence] is sufficient to shift the burden of producing evidence." McCormick on Evidence § 342, at 965 n.4 (3d ed. 1984). See also Friend, supra § 9-5, at 329. It is used in the former sense when applied to an affirmative issue such as the defense of insanity. A *prima facie* case exists when the evidence constitutes the threshold quantum that permits a jury to find the affirmative defense existed in fact. It is that essential quantity of evidence necessary to raise the defense and allow the jury to consider the issue.

The evidence in this case failed to raise an issue of insanity. Unless Skinner's testimony is treated as a qualified opinion, the defendant has no evidence that he suffered from a mental disease and did not know right from wrong. No qualified witness testified that the defendant labored under a defect of reason from a disease of the mind so that he did not know the nature and consequences of his act, or if he did know, that his act was wrong. Price, 228 Va. at 458, 323 S.E.2d at 109.

> While lay witnesses may testify to the attitude and demeanor of the defendant, "lay witnesses cannot express an opinion as to the existence of a particular mental disease or condition." Mullis v. Commonwealth, 3 Va. App. 564, 573, 351 S.E.2d 919, 925 (1987) (citing Phillips v. Stewart, 207 Va. 214, 220, 148 S.E.2d 784, 789 (1966)).

Herbin, 28 Va. App. at 183, 503 S.E.2d at 231.

In Mullis, 3 Va. App. at 573, 351 S.E.2d at 925, a lay witness was not permitted to explain the defendant's actions by testifying that he was "paranoid" because this might suggest to the jury that the defendant had been diagnosed "paranoid." In this case, no expert evidence supported the insanity defense, and the only qualified testimony stated the opposite. The other

witnesses could only recite observed behavior. The recital of the defendant's behavior did not provide any factual base from which a jury could find the defendant was suffering from a mental disorder or disease that prevented him from distinguishing right from wrong. The trial court did not err in granting the motion *in limine*.

The defendant also challenges the trial court's denial of his motion for a continuance and for a post-trial determination of sanity. Granting a continuance is a matter for the discretion of the trial court. Cardwell v. Commonwealth, 248 Va. 501, 509, 450 S.E.2d 146, 151 (1994). We find no error because the record reflects a sound basis for denying a continuance on the morning of the trial.

The defendant maintains that the trial court erred in not ordering the defendant treated in a mental hospital rather than sentenced to the department of corrections pursuant to Code § 19.2-176(A). The trial court heard extensive evidence of the defendant's mental condition at sentencing. It had a second expert evaluation from a psychologist employed by the defense after the trial. That opinion varied from that of the defendant's appointed expert. The trial court weighed the expert and lay evidence, and determined the defendant needed continued treatment. However, it found the evidence was not clear and convincing that the defendant should be confined in a mental hospital rather that sentenced to the penitentiary. It is the province of the trial judge to weigh and evaluate the evidence. Barker v. Commonwealth, 230 Va. 370, 373, 337 S.E.2d 729, 732 (1985). The evidence supported the trial court's decision. Accordingly, we find no error.

Affirmed.

Elder, J., with whom Fitzpatrick, C.J., and Benton, J., join, dissenting.

I believe the trial court's exclusion of all evidence related to appellant's sanity was error, and I would reverse and remand for a new trial without reaching appellant's other assignments of error. Thus, I respectfully dissent.

"[I]nsanity is an affirmative defense that the defendant must establish" by a preponderance of the evidence. Shifflett v. Commonwealth, 221 Va. 760, 769, 274 S.E.2d 305, 310 (1981); see Taylor v. Commonwealth, 208 Va. 316, 322, 157 S.E.2d 185, 189-90 (1967).

"'[T]he actual M'Naghten test for insanity, stated in the disjunctive, is the rule in Virginia.'" Herbin v. Commonwealth, 28 Va. App. 173, 181, 503 S.E.2d 226, 230 (1998) (quoting Price v. Commonwealth, 228 Va. 452, 459, 323 S.E.2d 106, 110 (1984)). Under this rule,

> "it must be clearly proven that, at the time of the committing of the act, the party accused was labouring [sic] under such a defect of reason, from *disease of the mind*, as not to know the nature and quality of the act he was doing; or, if he did know it, that he did not know he was doing what was wrong."

Price, 228 Va. at 457-58, 323 S.E.2d at 109 (quoting M'Naghten's Case, 10 Cl. & F. 200, 8 Eng. Rep. 718, 722-23 (1843) (emphasis added)). The Supreme Court of Virginia has explained the application of both facets of the test as follows:

> "The first portion of M'Naghten relates to an accused who is psychotic to an extreme degree. It assumes an accused who, because of mental disease, did not know the nature and quality of his act; he simply did not know what he was doing. For example, in crushing the skull of a human being with an iron bar, he believed that he was smashing a glass jar. The latter portion of M'Naghten relates to an accused who knew the nature and quality of his act. He knew what he was doing; he knew that he was crushing the skull of a human being with an iron bar. However, because of mental disease, he did not know that what he was doing was wrong. He believed, for example, that he was carrying out a command from God."

- 11 -

Id. at 459-60, 323 S.E.2d at 110 (quoting Charles Torcia, Wharton's Criminal Law § 100, at 9 (14th ed. 1979)).  Where the offender knows the act is against the law but believes he was under orders from God to commit it, his actions satisfy the second facet of the M'Naghten test.  People v. Schmidt, 110 N.E. 945, 949 (N.Y. 1915) (Cardozo, J.).

> Knowledge that an act is forbidden by law will in most cases permit the inference of knowledge that . . . it is also condemned as an offense against good morals.  Obedience to the law is itself a moral duty.  If, however, there is an insane delusion that God has appeared to the defendant and ordained the commission of a crime, we think it cannot be said of the offender that he knows the act to be wrong.

Id.; see People v. Skinner, 704 P.2d 752, 764 (Cal. 1985) ("Courts in a number of jurisdictions which have considered the question have come to the same conclusion as we do, that a defendant who is incapable of understanding that his act is morally wrong is not criminally liable merely because he knows the act is unlawful."); see also, e.g., State v. Worlock, 569 A.2d 1314, 1321-22 (N.J. 1990); State v. Kirkham, 319 P.2d 859, 860-61 (Utah 1958);

Evidence of past acts of the accused, whether criminal or not, are admissible if they have a tendency to show the mental condition of the accused at the time of the commission of the charged offense.  Farris v. Commonwealth, 209 Va. 305, 307, 163 S.E.2d 575, 576 (1968).

"While lay witnesses may testify to the attitude and demeanor of the defendant, '[l]ay witnesses cannot express an opinion as to the existence of a particular mental disease or condition.'"  Herbin, 28 Va. App. at 183, 503 S.E.2d at 231 (quoting Mullis v. Commonwealth, 3 Va. App. 564, 573, 351 S.E.2d 919, 925 (1987) (holding lay witness could not describe defendant's actions as "paranoid" because such a description might suggest to the jury that defendant had been diagnosed as "paranoid").  Thus, "[a]lthough sanity or insanity may be established by lay witnesses, it is generally recognized that it is advisable to adduce expert testimony to better resolve such a complex problem."  Shifflett, 221 Va. at 769, 274 S.E.2d at

- 12 -

311.  Applying these principles in <u>McCulloch v. Commonwealth</u>, 29 Va. App. 769, 514 S.E.2d 797 (1999), we upheld the trial court's exclusion of lay testimony--"testimony of lay witnesses who observed [McCulloch's] behavior, demeanor, and actions"--on the issue of sanity because "*no medical evidence* supporting an insanity defense was introduced, and the lay testimony defendant proffered was insufficient to establish a *prima facie* case for an insanity defense."  <u>Id.</u> at 775, 514 S.E.2d 800 (emphasis added).

Here, appellant conceded that Joseph Skinner--a licensed clinical social worker--lacked "train[ing] for forensic evaluations," "doesn't make the decisions of insanity," and thus, could not offer an opinion as to whether appellant was legally insane at the time of the instant offenses. However, counsel noted the opinion of Dr. William Brock--the licensed clinical psychologist appointed by the court expressly for the purpose of evaluating, *inter alia*, appellant's sanity at the time of the offense--that appellant "seems to meet the threshold criteria for an insanity defense" because he was "most likely psychotic" at the time of the killing.  Although Dr. Brock opined that the psychosis "most likely" resulted from "[appellant's] voluntary excessive use of cocaine," which would not have supported an insanity defense, <u>see, e.g.</u>, <u>Herbin</u>, 28 Va. App. at 184, 503 S.E.2d at 231 (holding temporary mental defect caused by voluntary ingestion of drugs, whether or not pursuant to an addiction, is insufficient to establish insanity but that long-term and severe drug abuse may cause mental defect or disease that can serve as basis for insanity defense), Dr. Brock conceded that appellant's cocaine ingestion could merely have exacerbated an underlying mental disorder.[1]

Appellant argued that Skinner, although not an expert on the issue of sanity, nevertheless had significant training and experience in the diagnosis and treatment of mental health disorders

---

[1] A more detailed summary of Dr. Brock's opinion and other evidence related to the insanity defense is contained in the panel majority opinion.  <u>See</u> <u>White v. Commonwealth</u>, 44 Va. App. 429, 431-37, 605 S.E.2d 337, 338-41 (2004).

and, thus, would testify as more than a mere lay witness. Appellant had provided Skinner with "a copy of the rules," and Skinner indicated, based on his review of the rules, that he could provide a "professional opinion." Appellant had reported to Skinner "that he had been hearing the voices of what he believed to be God, both before and after the incident and at times when he was not taking drugs." Skinner "believed [appellant] had a type of psychosis that was a religious obsession" and that "at the time of the incident [appellant] believed that God's law superseded man's law, and therefore [that] what he did was not wrong." The court had before it notes of Skinner's treatment of appellant at the jail from April through November 2002. Those notes detailed appellant's repeated reports of hearing voices, including the voices of God and the devil, and supported counsel's proffer regarding Skinner's expected testimony.[2]

The trial court concluded that Skinner's testimony about appellant's mental condition "would not rise to the level of that which would warrant admissibility on the issue of insanity at the time of the offense," holding in essence that the testimony would not be relevant because he could not render an opinion on the issue of sanity. Appellant conceded in the trial court that Skinner was not qualified to render an opinion on the issue of sanity.[3] Thus, I agree with the majority that the trial court did not err in preventing Skinner from testifying to his opinion that appellant was legally insane or did not know the difference between right and wrong when he committed the charged offenses. Nevertheless, I would hold the trial court abused its discretion

_____

[2] What may be relevant to a trial court's threshold determination of whether an accused is entitled to present an insanity defense may be different from what will be admissible at trial to prove or disprove that defense. Cf. Pritchett v. Commonwealth, 263 Va. 182, 187, 557 S.E.2d 205, 208 (2002) (holding error to exclude proffered expert testimony that defendant was mentally retarded and that his mental retardation rendered him susceptible to suggestive police interrogation resulting in confession "so long as the expert does not opine on the truth of the statement at issue" because "such testimony [would] improperly invade[] the province of the jury to determine the reliability of a witness").

[3] I would assume without deciding, for purposes of this appeal only, that his concession was an accurate statement of the law.

in excluding the remainder of Skinner's proffered testimony, along with the additional proffered lay testimony, to the extent such testimony could have established a non-drug-induced cause of appellant's psychosis and an inability to understand right from wrong, and other relevant evidence bearing on the issue of appellant's mental state at the time of the offense.

Code § 19.2-169.5 governs the appointment of a qualified mental health expert or experts to evaluate the sanity of a defendant who establishes "probable cause to believe that the defendant's sanity will be a significant factor in his defense and that the defendant is financially unable to pay for expert assistance." Code § 19.2-169.5(A). That code section provides that any expert so appointed "shall be (a) a psychiatrist, a clinical psychologist, or an individual with a doctorate degree in clinical psychology who has successfully completed [certain approved] forensic evaluation training . . . and (ii) [is] qualified by specialized training and experience to perform forensic evaluations." Id.; cf. Code § 19.2-264.3:1 (governing appointment of mental health expert for defendant "charged with or convicted of capital murder," containing same requirements for appointment as Code § 19.2-169.5). A defendant who "intends (i) to put in issue his sanity at the time of the crime charged and (ii) to present testimony of an expert to support his claim on this issue at trial . . . shall give notice in writing to the attorney for the Commonwealth . . . ." Code § 19.2-168. The Supreme Court has held that where an accused gives notice of such intent, the trial court "ha[s] the inherent power to require [the accused] to be examined [on behalf of the Commonwealth] . . . in order that his examiners might report their opinions as to his sanity at the time of his alleged crimes and *testify* to such opinion [before the jury] if called by the Commonwealth as rebuttal witnesses." Shifflett, 221 Va. at 769, 274 S.E.2d at 311 (emphasis added). The legislature subsequently codified this right at Code § 19.2-168.1. See 1982 Va. Acts, ch. 653; 1986 Va. Acts, ch. 535. Experts appointed to aid the accused or the Commonwealth in addressing the issue of the accused's sanity at the time of the

offense have been permitted to testify both that the accused "did not understand right from wrong, did not understand the nature, character and consequences of his acts committed on that date, and *was legally insane*" and that the accused "*was not psychotic or insane* on [the day of the offense], knew what he was doing at that time, and knew that it was wrong."[4] Id. at 764-65, 274 S.E.2d at 307-08 (emphases added); see also Jones v. Commonwealth, 28 Va. App. 444, 448-49, 506 S.E.2d 27, 29 (1998) (holding proffer of expected testimony of clinical psychologist that defendant's illness "made her unable to understand the nature and consequences of her acts and unable to understand right from wrong" and psychologist's written report that defendant suffered from various psychiatric disorders that "render[ed] her mentally incompetent in times of extreme stress" "clearly establish[ed] that [the psychologist] could have provided an evidentiary basis upon which the jury might have found that [the defendant] was insane at the time of the offense").

Our case law clearly establishes that lay testimony relevant to the issue of legal sanity also is admissible as long as the evidence as a whole is sufficient to establish a *prima facie* case for an insanity defense. See McCulloch, 29 Va. App. at 775, 514 S.E.2d at 800; see also People v. Scala, 491 N.Y.S.2d 555, 562-63 (N.Y. Sup. Ct. 1985) (upholding admissibility, in cases involving insanity defense, of *relevant* testimony from neurologists and other "nonpsychiatric

---

[4] Generally, neither lay nor expert witnesses are permitted to give testimony on an ultimate issue in a criminal case because allowing such testimony would "invade the province of the jury." See, e.g., Strawderman v. Commonwealth, 200 Va. 855, 859-60, 108 S.E.2d 376, 379-80 (1959); see also 1993 Va. Acts, ch. 909 (codified at Code § 8.01-401.3 (partially abrogating rule in civil cases, as to testimony about purely factual rather than legal matters, and leaving intact "the exceptions to the 'ultimate fact in issue' rule recognized in the Commonwealth prior to enactment of this section")). However, as discussed in the text, the Supreme Court has allowed expert testimony on the precise issue of whether a defendant was "legally sane" or "legally insane" at the time of the charged offense. See Shifflett, 221 Va. at 769, 274 S.E.2d at 311. Commentator Charles Friend has observed that "opinion [testimony] has been received on questions of, *inter alia*, mental condition, . . . based upon the practical difficulty of conveying such information to the jury in any other form." Charles E. Friend, The Law of Evidence in Virginia § 17-3(a), at 643 (6th ed. 2003).

- 16 -

physicians" as well as "*properly qualified licensed* nonphysician mental health professionals" such as *licensed* clinical social workers (emphasis added)).  Here, assuming Skinner's testimony would have been insufficient on its own to prove insanity, when coupled with Dr. Brock's testimony and the additional lay testimony, it was sufficient to allow appellant to establish a *prima facie* case for an insanity defense.  No case law states the principle, apparently adopted by the majority, that the testimony sufficient to establish a *prima facie* case must come from a single witness.  Our case law also contains no requirement that an expert opine on the ultimate issue--that the defendant was legally insane--in order for the jury to reach such a conclusion itself based on evidence that the defendant suffered from a mental disease or defect that was not drug induced and that prevented him from knowing the nature and quality of his act or from knowing that his actions were wrong.

Dr. Brock opined that, "[b]y all indications, [appellant] was, indeed, experiencing symptoms of a psychosis at the time of the offenses" and was "most likely psychotic" at that time.  As a result, Dr. Brock wrote "that [appellant] seems to meet the threshold criteria for an insanity defense."  Dr. Brock concluded appellant's psychosis resulted from the voluntary ingestion of illegal drugs, which he said would have disqualified appellant from asserting an insanity defense, but he conceded appellant's cocaine ingestion could merely have exacerbated an underlying mental disorder.  Appellant was entitled to offer evidence that his psychosis resulted from an underlying mental disorder rather than his voluntary ingestion of illegal drugs.  Appellant also was entitled to offer evidence that he acted based on what he believed were orders from God and, thus, that he did not know what he was doing was morally wrong.  Such evidence was highly relevant and, if believed by the fact finder, would have permitted the fact finder to reject the conflicting portions of Dr. Brock's opinion and to reach an independent conclusion on the ultimate issue of appellant's sanity at the time of the offenses.

Appellant attempted to offer such testimony through Mr. Skinner. While Skinner was not able, based on appellant's concession, to testify as to the ultimate issue of insanity, his proffered testimony provided a basis to disregard Dr. Brock's legal conclusion that appellant's voluntary drug use precluded an insanity defense. Evidence admitted at the sentencing hearing confirmed that Skinner had both training as a licensed clinical social worker and experience as the director of an outpatient mental health services organization for a period of twenty-five years. Skinner met appellant within two weeks of the instant offenses and counseled him in jail on a regular basis for the six months preceding the date scheduled for trial; the notes from those counseling sessions were admitted into evidence and were available to the court when it made its ruling. Skinner could not testify, based on appellant's concession, that appellant was insane when he committed the offense or that he did not know the difference between right and wrong at that time. However, Skinner should have been permitted to testify about any relevant symptoms that he observed and that appellant reported while Skinner was treating appellant during his incarceration, including appellant's ongoing reports that he heard the voices of God and others, as well as other issues within Skinner's area of competence not touching on the ultimate issue of sanity. Other proffered evidence, including the testimony of appellant's mother, would have supported a finding that appellant began hearing voices before he became a heavy user of cocaine. This evidence, taken as a whole, if believed by the trier of fact, would have negated Dr. Brock's opinion that appellant's psychosis did not qualify him for an insanity defense because it resulted from the voluntary ingestion of illegal drugs.

The evidence, if believed, also provided both a legal and a factual basis for the trier of fact to reject Dr. Brock's conclusion that appellant understood right from wrong and, thus, could not avail himself of the insanity defense. The proffered testimony was that appellant reported God told him to "do battle" with the victim and said he believed he was "doing God's work,"

- 18 -

whether or not he knew it was against the law.  Under settled principles, where the offender knows the act is against the law but believes he was under orders from God to commit it, his actions satisfy the second facet of the M'Naghten test.  See, e.g., Schmidt, 110 N.E. at 949.  Thus, contrary to the opinion of Dr. Brock, the trier of fact could have concluded the evidence supported this prong of the insanity defense even if appellant showed an awareness that his actions were criminal by engaging in efforts to avoid apprehension.

The record also provides a factual basis upon which a jury could have found appellant did not engage in efforts to avoid detection and apprehension.  Although appellant donned a bandana before approaching the murder victim, he did so while in the presence of a witness.  Appellant had no prior connection to the witness and was in his presence only because appellant had paid the witness $1,300 to drive him to New York when his car broke down.  Further, appellant specifically told the witness to wait for him while he went to commit murder.  The witness, clearly more rational than appellant, drove off and contacted police, which led to appellant's apprehension for the crime.  Although appellant fled the scene of the murder and spent the night in a vacant house, no evidence in the record indicates he did so, as Dr. Brock opined, in order to hide from police.  A plausible hypothesis from the evidence in the record is that appellant stayed in the vacant house because God told him to do so or simply because he had insufficient funds for a hotel room.  Further, although appellant may have disposed of some of his bloody clothing, he did not remove his bloodstained shoes or socks, and he also retained some bloodstained money.  Finally, he donned additional clothing of a type hardly calculated to help him *avoid* detection by the police--"a white fur coat, . . . red tights, and yellow shorts."  Police spotted him in these clothes as he walked backwards on an interstate exit ramp, facing down the ramp while proceeding up it, behavior a jury could find was *more* rather than less likely to bring him to the attention of police.  Thus, although Dr. Brock opined appellant engaged in efforts to avoid

apprehension that showed he knew his actions were punishable under the law, the record would have permitted a jury to draw the opposite conclusion.

Because appellant proffered relevant evidence that, if believed by the trier of fact, would have permitted the fact finder to infer he was legally insane at the time of killing, I would hold the trial court committed reversible error in granting the Commonwealth's motion to exclude all evidence related to appellant's mental condition and sanity at the time of the offense. Despite Skinner's inability to testify that appellant was "insane" or believed "what he did was not wrong," the testimony outlined above was highly probative of the issue of appellant's sanity, and its exclusion was reversible error.

For these reasons, I would hold the trial court's exclusion of all evidence related to appellant's sanity was error and would reverse and remand for a new trial without reaching appellant's other assignments of error. Thus, I respectfully dissent.

                                        Tuesday                    11th

        January, 2005.


William White, Jr.,                                                  Appellant,

  against            Record No. 2174-03-2
                     Circuit Court Nos. CR02-8124 and CR02-8125

Commonwealth of Virginia,                                           Appellee.



                    Upon a Petition for Rehearing En Banc

         Before Chief Judge Fitzpatrick, Judges Benton, Elder, Annunziata,* Bumgardner,
                  Frank, Humphreys, Clements, Felton, Kelsey and McClanahan


        On December 14, 2004 came the appellee, by the Attorney General of Virginia, and filed a

petition praying that the Court set aside the judgment rendered herein on November 30, 2004, and grant

a rehearing *en banc* thereof.

        On consideration whereof, the petition for rehearing *en banc* is granted, the mandate entered

herein on November 30, 2004 is stayed pending the decision of the Court *en banc*, and the appeal is

reinstated on the docket of this Court.

        The parties shall file briefs in compliance with Rule 5A:35. The appellee shall attach as an

addendum to the opening brief upon rehearing *en banc* a copy of the opinion previously rendered by the

Court in this matter.  It is further ordered that the appellee shall file with the clerk of this Court twelve

additional copies of the appendix previously filed in this case.

A Copy,

Teste:

Cynthia L. McCoy, Clerk

By:

Deputy Clerk

COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Fitzpatrick, Judges Elder and Bumgardner
Argued at Richmond, Virginia


WILLIAM WHITE, JR.

                                                        OPINION BY
v.        Record No. 2174-03-2                   JUDGE LARRY G. ELDER
                                                     NOVEMBER 30, 2004
COMMONWEALTH OF VIRGINIA


             FROM THE CIRCUIT COURT OF GREENSVILLE COUNTY
                         Robert G. O'Hara, Jr., Judge

             (W. William Robinson, III; Hudson, Robinson & Newsome, PLLC,
             on brief), for appellant.  Appellant submitting on brief.

             Robert H. Anderson, III, Senior Assistant Attorney General
             (Jerry W. Kilgore, Attorney General, on brief), for appellee.


        William White, Jr., (appellant) appeals from his convictions for first-degree murder and

assault and battery on a police officer.  On appeal, he contends the trial court erroneously

(1) denied his pretrial motion for a continuance; (2) granted the Commonwealth's motion to

preclude him from offering evidence relevant to an insanity defense; and (3) denied his post-trial

motion for a mental evaluation.[1]  We hold the trial court's exclusion of all evidence related to

appellant's sanity was error, and we reverse and remand for a new trial without reaching

appellant's other assignments of error.

_____

        [1] In granting appellant's petition for appeal on these issues, we also directed the parties to
address "the impact on appeal" of appellant's entry, with the trial court's and the
Commonwealth's consent, of a conditional plea of *nolo contendere* under Code § 19.2-254.  The
Commonwealth adheres to the position it took at trial that a proper interpretation of the guilty
plea statute permits entry of a conditional plea of *nolo contendere*.  We hold that this concession
has become the law of the case, binding on appeal, and that we need not consider this issue on its
merits.

## BACKGROUND

On March 29, 2002, appellant stabbed and killed Mark Hulo and fled the scene of the murder. On the afternoon of March 30, State Trooper K.W. Spencer spotted appellant walking backwards on Interstate 95. Appellant was wearing a white fur coat, no shirt, red tights, and yellow shorts. Believing appellant might be the perpetrator in Hulo's murder, Trooper Spencer called for backup and took appellant into custody. While Trooper Spencer was attempting to subdue appellant, appellant hit him "several times in the chest and face area."

Appellant was arrested for the instant offenses and taken to the Southside Regional Jail. His court-appointed attorney moved for a psychiatric evaluation to determine both whether he was sane at the time of the offense and whether he was competent to assist in his own defense. The trial court appointed William D. Brock, a licensed clinical psychologist, to evaluate appellant.

Dr. Brock indicated appellant reported "rather heavy abuse of cocaine, alcohol, and marijuana, as well as occasional use of crack cocaine." Dr. Brock concluded appellant "[met] the minimum criteria to be considered competent to stand trial."

On the issue of appellant's sanity at the time of the offense, Dr. Brock opined as follows:

> *By all indications, [appellant] was, indeed, experiencing symptoms of a psychosis at the time of the offenses for which he currently stands charged.* He was diagnosed and briefly treated for such symptoms [while living in Louisiana] several months prior [to] the offense and apparently, against medical advice, discontinued the antipsychotic medication. Without benefit of the Haldol which had been prescribed, [appellant] also returned to using large amounts of cocaine, a substance that appears likely to have been the cause of his psychotic symptoms to begin with and which likely exacerbated his symptoms. . . .
>
> *While the evidence would suggest that [appellant] seems to meet the threshold criteria for an insanity defense, several factors are contraindicative of a viable insanity defense.* First, [appellant's]

psychotic symptoms appear to have either been the result of or . . . exacerbated by (most likely the former), his voluntary and excessive use of cocaine.  An altered mental status resultant from voluntary ingestion of illegal substances does not qualify as grounds for an insanity defense.  Second, while most likely psychotic at the time of the offense, [appellant] made significant efforts to not be identified or get caught. . . .  All these efforts indicate that [appellant], despite his psychotic symptoms, knew that his actions were wrong and punishable under the law.  Thus, while experiencing a probable drug-induced psychosis at the time of the offense, his understanding of right and wrong was not diminished.

Given these conclusions, it is the opinion of this examiner that while there may be some basis for mitigation at the time of sentencing based on mental health issues, there is not a significant case for raising an insanity defense.

(Emphasis added).  Appellant subsequently asserted his intent to argue he was insane when he committed the charged crimes, and the Commonwealth filed a motion *in limine* to exclude any evidence of insanity.

On the date scheduled for trial, appellant moved for a continuance, alleging, *inter alia*, that he had been unable timely to consult with a "Dr. Skinner," a mental health professional about whom appellant had told his attorney.  Appellant's attorney made contact with Joseph Skinner, a licensed clinical social worker (L.C.S.W.), at the end of the previous day.  He confirmed that Joseph Skinner had seen appellant on multiple occasions.  He also obtained "the notes from the jail where [Joseph Skinner] discuss[es] [appellant's] mental problems."  Those notes were marked filed by the court during the argument on the continuance motion.  The notes documented Skinner's treatment of appellant, the efforts of other medical personnel to adjust appellant's medication, and appellant's efforts to cope with his mental disorder.  They also documented Skinner's conclusion that appellant "has a religious preoccupation [with] visual and auditory hallucinations."

After appellant's counsel introduced Skinner's notes into evidence, appellant's counsel made apparently conflicting statements about the substance of Skinner's expected testimony. According to the transcript of the motion hearing, counsel stated first that Skinner "advised me that his opinion of my client's mental ability was *entirely of that of* [sic] the expert who had been appointed in this case[, Dr. Brock]." (Emphasis added). However, on the same page of the transcript, counsel argued, "I now have a social worker who is *differing severely* from Dr. Brock's evaluation. And I would ask for a continuance to be able to investigate the matter further." (Emphasis added). Counsel subsequently argued about "the *absolute divergence* of the two opinions" of Dr. Brock and Mr. Skinner. (Emphasis added).

Appellant said that, under the Virginia Code, Skinner, as a licensed clinical social worker, was not authorized "to render expert opinion on legal [inaudible] under the Virginia Code." However, he proffered as follows:

> [Mr.] Skinner advised me that he could render a professional opinion, and I did fax him a copy of the rules, that his opinion would be that at the time of the incident [appellant] believed that God's law superseded man's law, and therefore what he did was not wrong. And, that would be his testimony if he was allowed to give an opinion.

The trial court said, "But, you have no established authority that would permit him to testify to an opinion regarding [appellant's] sanity at the time of the offense." Appellant's counsel responded,

> That's correct. However, it would seem that considering the amount of time that Dr. Brock spent with [appellant], which was fairly short compared to the time [Mr.] Skinner spent with [appellant] which was fairly extensive, that it would be a situation where the absolute divergence of the two opinions would be a situation where possibly another evaluation should be done in which Dr. Brock would be given [Mr.] Skinner's notes. Or, maybe another person entirely appointed to do a second evaluation based upon this evidence.

The trial court denied appellant's continuance motion and proceeded to consider the Commonwealth's motion to preclude appellant from presenting an insanity defense. Appellant proffered the testimony of various lay witnesses who would give factual testimony about appellant's mental status (1) before he left Louisiana for Virginia, where he committed the instant offenses, and (2) after he was incarcerated in Virginia for those offenses. Appellant's former roommate in Louisiana, Troy Whidbee, was prepared to testify that before appellant left for Virginia, he said he believed "God needed soldiers" and that "someone was out to get him." Appellant's mother, who also lived in Louisiana, was prepared to testify that, prior to appellant's arrival in Virginia, he had received two traffic citations for driving at a high rate of speed with his lights off. She was also prepared to testify that appellant reported "hearing voices," both before he came to Virginia and after he was incarcerated, and that he said he believed "God and the devil were fighting over his soul." Correctional Officer Arithea Hicks was prepared to testify, and in fact did so at sentencing, that appellant began to tell her "a few times a week," "early on in his incarceration," that he was hearing voices. Hicks said appellant "would stop [complaining about the voices] for awhile and not need any help and then it would start again." Appellant made similar reports to at least one other correctional officer.

Appellant argued that Skinner's testimony would include appellant's reports

> that he had been hearing the voices of what he believed to be God, both before and after the incident and at times when he was not taking drugs. And, obviously he had not been taking [illegal] drugs while he was at the jail. That [Skinner] believed [appellant] had a type of psychosis that was a religious obsession.

Appellant's counsel also argued Dr. Brock's opinion supported his position to the extent Dr. Brock opined appellant was in fact suffering from psychosis, although he opined it was induced by appellant's voluntary ingestion of legal and illegal drugs and, thus, did not qualify as legal insanity. Counsel argued further,

- 5 -

I believe here, Your Honor, because of that [aspect of Dr. Brock's opinion,] if the defense can produce evidence that shows that [appellant] was having the same symptoms, that he was having directly prior to the incident, that [he] was hearing voices and indeed he was having those symptoms while he was not under the influence of drugs, i.e. prior to the event being testified to by his family members, more importantly after the event when he was incarcerated without having access to drugs, both by the guards and more importantly by Dr. Skinner. . . . Obviously, Dr. Skinner, as the court has ruled[,] is not qualified to give an expert opinion. However, I don't think I would characterize him as a true lay witness either. Obviously, someone off the street is not exactly the same as a doctor who is well versed in mental problems and diagnosis of [Axis] 'I' and that type of thing. Dr. Skinner is simply someone who has not been trained for forensic evaluations. He doesn't make the decisions of insanity. But, . . . he is talking to [appellant] . . . [a]nd I think that significantly distinguishes this case from the [McCullough] case in which those kinds of facts were not present.

. . . [C]onsidering that . . . the defense of insanity . . . is an essential key issue in this case and we're trying a man for first degree murder and it would seem that to preclude even the admission of the evidence, to preclude that from the jury instructions severely prejudices [appellant].

The Commonwealth argued that the only expert testimony was Dr. Brock's opinion that appellant was legally sane at the time of the offenses and that the lay witness testimony was of only marginal relevance because it did not involve appellant's mental status at the time of the offense. It also argued that appellant's claim that his behavior before he came to Virginia indicated he suffered from psychosis even when he was not ingesting illegal drugs was flawed because appellant told Dr. Brock he had been ingesting cocaine and various other drugs regularly for at least 30 days prior to the instant offense. As a result, it argued, appellant presented insufficient evidence to "jump over the hurdle of the voluntary intoxication."

The trial court granted the Commonwealth's motion *in limine*, ruling "that the introduction of the proffered testimony would not rise to the level of that which would warrant admissibility on the issue of insanity at the time of the offense."

Appellant then entered guilty pleas conditioned on his right to appeal the court's rulings on various pretrial motions.

At appellant's sentencing, Skinner testified that appellant, who was 28 at the time of his arrest, reported he was "probably" in his "early twenties or late teens" "when he started to hear the voices and to feel different." Appellant's mother testified he began behaving strangely "around the last part of '98," when he was 24 years old. The trial court noted appellant's statement in the presentence report that he did not start using cocaine until 2000 or 2001.

Correctional Officer David Allen testified that on May 19, 2003, when appellant had been in custody for seven weeks, he removed his clothing except for his tennis shoes and refused requests to clothe himself. He destroyed the television and cable box, "wrapped his arms," and "armed himself with shards of glass from the t.v." He damaged the doors and walls and threatened the staff before medical personnel arrived to "talk to him." Other evidence established that appellant reported visual and auditory hallucinations during this period of time and that he was subsequently hospitalized and medicated, after which he reported an improvement in his psychiatric symptoms.

The court subsequently sentenced appellant to five years for the assault and battery of a law enforcement officer and life for the murder conviction. Appellant then noted this appeal.

II.

ANALYSIS

A.

ADMISSIBILITY OF EVIDENCE OF INSANITY IN GUILT PHASE

Appellant contends the trial court erroneously granted the Commonwealth's motion to preclude him from offering evidence relevant to an insanity defense. Upon review of the

proffered evidence, we agree that exclusion of evidence of appellant's sanity was reversible error.

"[I]nsanity is an affirmative defense that the defendant must establish" by a preponderance of the evidence. Shifflett v. Commonwealth, 221 Va. 760, 769, 274 S.E.2d 305, 310 (1981); see Taylor v. Commonwealth, 208 Va. 316, 322, 157 S.E.2d 185, 189-90 (1967).

"'[T]he actual M'Naghten test for insanity, stated in the disjunctive, is the rule in Virginia.'" Herbin v. Commonwealth, 28 Va. App. 173, 181, 503 S.E.2d 226, 230 (1998) (quoting Price v. Commonwealth, 228 Va. 452, 459, 323 S.E.2d 106, 110 (1984)).  Under this rule,

> "it must be clearly proven that, at the time of the committing of the act, the party accused was labouring [sic] under such a defect of reason, from *disease of the mind*, as not to know the nature and quality of the act he was doing; or, if he did know it, that he did not know he was doing what was wrong."

Price, 228 Va. at 457-58, 323 S.E.2d at 109 (quoting M'Naghten's Case, 10 Cl. & F. 200, 8 Eng. Rep. 718, 722-23 (1843) (emphasis added)).  The Supreme Court of Virginia has explained the application of both facets of the test as follows:

> "The first portion of M'Naghten relates to an accused who is psychotic to an extreme degree.  It assumes an accused who, because of mental disease, did not know the nature and quality of his act; he simply did not know what he was doing.  For example, in crushing the skull of a human being with an iron bar, he believed that he was smashing a glass jar.  The latter portion of M'Naghten relates to an accused who knew the nature and quality of his act.  He knew what he was doing; he knew that he was crushing the skull of a human being with an iron bar.  However, because of mental disease, he did not know that what he was doing was wrong.  He believed, for example, that he was carrying out a command from God."

Id. at 459-60, 323 S.E.2d at 110 (quoting Charles Torcia, Wharton's Criminal Law § 100, at 9 (14th ed. 1979)).

Evidence of past acts of the accused, whether criminal or not, are admissible if they have a tendency to show the mental condition of the accused at the time of the commission of the charged offense. Farris v. Commonwealth, 209 Va. 305, 307, 163 S.E.2d 575, 576 (1968).

"While lay witnesses may testify to the attitude and demeanor of the defendant, '[l]ay witnesses cannot express an opinion as to the existence of a particular mental disease or condition.'" Herbin, 28 Va. App. at 183, 503 S.E.2d at 231 (quoting Mullis v. Commonwealth, 3 Va. App. 564, 573, 351 S.E.2d 919, 925 (1987) (holding lay witness could not describe defendant's actions as "paranoid" because such a description might suggest to the jury that defendant had been diagnosed as "paranoid"). Thus, "[a]lthough sanity or insanity may be established by lay witnesses, it is generally recognized that it is advisable to adduce expert testimony to better resolve such a complex problem." Shifflett, 221 Va. at 769, 274 S.E.2d at 311. Applying these principles in McCulloch v. Commonwealth, 29 Va. App. 769, 514 S.E.2d 797 (1999), we upheld the trial court's exclusion of lay testimony--"testimony of lay witnesses who observed [McCulloch's] behavior, demeanor, and actions"--on the issue of sanity because "*no medical evidence* supporting an insanity defense was introduced, and the lay testimony defendant proffered was insufficient to establish a *prima facie* case for an insanity defense." Id. at 775, 514 S.E.2d 800 (emphasis added).

Here, appellant conceded that Joseph Skinner--a licensed clinical social worker--lacked "train[ing] for forensic evaluations," "doesn't make the decisions of insanity," and thus, could not offer an opinion as to whether appellant was legally insane at the time of the instant offenses. However, counsel noted the opinion of Dr. William Brock--the licensed clinical psychologist appointed by the court expressly for the purpose of evaluating, *inter alia*, appellant's sanity at the time of the offense--that appellant "seems to meet the threshold criteria for an insanity defense" because he was "most likely psychotic" at the time of the killing. Although Dr. Brock opined

that the psychosis "most likely" resulted from "[appellant's] voluntary excessive use of cocaine," which would not have supported an insanity defense, see, e.g., Herbin, 28 Va. App. at 184, 503 S.E.2d at 231 (holding temporary mental defect caused by voluntary ingestion of drugs, whether or not pursuant to an addiction, is insufficient to establish insanity but that long-term and severe drug abuse may cause mental defect or disease that can serve as basis for insanity defense), Dr. Brock conceded that appellant's cocaine ingestion could merely have exacerbated an underlying mental disorder.

Appellant argued that Skinner, although not an expert on the issue of sanity, nevertheless had significant training and experience in the diagnosis and treatment of mental health disorders and, thus, would testify as more than a mere lay witness. Appellant had provided Skinner with "a copy of the rules," and Skinner indicated, based on his review of the rules, that he could provide a "professional opinion." Appellant had reported to Skinner "that he had been hearing the voices of what he believed to be God, both before and after the incident and at times when he was not taking drugs." Skinner "believed [appellant] had a type of psychosis that was a religious obsession" and that "at the time of the incident [appellant] believed that God's law superseded man's law, and therefore [that] what he did was not wrong." The court had before it notes of Skinner's treatment of appellant at the jail from April through November 2002. Those notes detailed appellant's repeated reports of hearing voices, including the voices of God and the devil, and supported counsel's proffer regarding Skinner's expected testimony.[2]

---

[2] We note that what may be relevant to a trial court's threshold determination of whether an accused is entitled to present an insanity defense may be different from what will be admissible at trial to prove or disprove that defense. Cf. Pritchett v. Commonwealth, 263 Va. 182, 187, 557 S.E.2d 205, 208 (2002) (holding error to exclude proffered expert testimony that defendant was mentally retarded and that his mental retardation rendered him susceptible to suggestive police interrogation resulting in confession "so long as the expert does not opine on the truth of the statement at issue" because "such testimony [would] improperly invade[] the province of the jury to determine the reliability of a witness").

The trial court concluded that Skinner's testimony about appellant's mental condition "would not rise to the level of that which would warrant admissibility on the issue of insanity at the time of the offense," holding in essence that the testimony would not be relevant because he could not render an opinion on the issue of sanity. Appellant conceded in the trial court that Skinner was not qualified to render an opinion on the issue of sanity.[3] Thus, we conclude the trial court did not err in preventing Skinner from testifying to his opinion that appellant was legally insane or did not know the difference between right and wrong when he committed the charged offenses. Nevertheless, we hold the trial court abused its discretion in excluding the remainder of Skinner's proffered testimony, along with the additional proffered lay testimony, to the extent such testimony could have established a non-drug-induced cause of appellant's psychosis, and other relevant evidence bearing on the issue of appellant's mental state at the time of the offense.

Code § 19.2-169.5 governs the appointment of a qualified mental health expert or experts to evaluate the sanity of a defendant who establishes "probable cause to believe that the defendant's sanity will be a significant factor in his defense and that the defendant is financially unable to pay for expert assistance." Code § 19.2-169.5(A). That code section provides that any expert so appointed "shall be (a) a psychiatrist, a clinical psychologist, or an individual with a doctorate degree in clinical psychology who has successfully completed [certain approved] forensic evaluation training . . . and (ii) [is] qualified by specialized training and experience to perform forensic evaluations." Id.; cf. Code § 19.2-264.3:1 (governing appointment of mental health expert for defendant "charged with or convicted of capital murder," containing same requirements for appointment as Code § 19.2-169.5). A defendant who "intends (i) to put in

---

[3] We assume without deciding, for purposes of this appeal only, that his concession was an accurate statement of the law.

issue his sanity at the time of the crime charged and (ii) to present testimony of an expert to support his claim on this issue at trial . . . shall give notice in writing to the attorney for the Commonwealth . . . ." Code § 19.2-168. The Supreme Court has held that where an accused gives notice of such intent, the trial court "ha[s] the inherent power to require [the accused] to be examined [on behalf of the Commonwealth] . . . in order that his examiners might report their opinions as to his sanity at the time of his alleged crimes and *testify* to such opinion [before the jury] if called by the Commonwealth as rebuttal witnesses." Shifflett, 221 Va. at 769, 274 S.E.2d at 311 (emphasis added). The legislature subsequently codified this right at Code § 19.2-168.1. See 1982 Va. Acts, ch. 653; 1986 Va. Acts, ch. 535. Experts appointed to aid the accused or the Commonwealth in addressing the issue of the accused's sanity at the time of the offense have been permitted to testify both that the accused "did not understand right from wrong, did not understand the nature, character and consequences of his acts committed on that date, and *was legally insane*" and that the accused "*was not psychotic or insane* on [the day of the offense], knew what he was doing at that time, and knew that it was wrong."[4] Id. at 764-65, 274 S.E.2d at 307-08 (emphases added); see also Jones v. Commonwealth, 28 Va. App. 444, 448-49, 506 S.E.2d 27, 29 (1998) (holding proffer of expected testimony of clinical psychologist that defendant's illness "made her unable to understand the nature and consequences of her acts

---

[4] Generally, neither lay nor expert witnesses are permitted to give testimony on an ultimate issue in a criminal case because allowing such testimony would "invade the province of the jury." See, e.g., Strawderman v. Commonwealth, 200 Va. 855, 859-60, 108 S.E.2d 376, 379-80 (1959); see also 1993 Va. Acts, ch. 909 (codified at § 8.01-401.3 (partially abrogating rule in civil cases, as to testimony about purely factual rather than legal matters, and leaving intact "the exceptions to the 'ultimate fact in issue' rule recognized in the Commonwealth prior to enactment of this section")). However, as discussed in the text, the Supreme Court has allowed expert testimony on the precise issue of whether a defendant was "legally sane" or "legally insane" at the time of the charged offense. See Shifflett, 221 Va. at 769, 274 S.E.2d at 311. Commentator Charles Friend has observed that "opinion [testimony] has been received on questions of, *inter alia*, mental condition, . . . based upon the practical difficulty of conveying such information to the jury in any other form." Charles E. Friend, The Law of Evidence in Virginia § 17-3(a), at 643 (6th ed. 2003).

- 12 -

and unable to understand right from wrong" and psychologist's written report that defendant suffered from various psychiatric disorders that "render[ed] her mentally incompetent in times of extreme stress" "clearly establish[ed] that [the psychologist] could have provided an evidentiary basis upon which the jury might have found that [the defendant] was insane at the time of the offense").

Our case law clearly establishes that lay testimony relevant to the issue of legal sanity also is admissible as long as the evidence as a whole is sufficient to establish a *prima facie* case for an insanity defense. See McCulloch, 29 Va. App. at 775, 514 S.E.2d at 800; see also People v. Scala, 491 N.Y.S.2d 555, 562-63 (N.Y. Sup. Ct. 1985) (upholding admissibility, in cases involving insanity defense, of *relevant* testimony from neurologists and other "nonpsychiatric physicians" as well as "*properly qualified licensed* nonphysician mental health professionals" such as *licensed* clinical social workers (emphasis added)). Here, assuming Skinner's testimony would have been insufficient on its own to prove insanity, when coupled with Dr. Brock's testimony and the additional lay testimony, it would have allowed appellant to establish a *prima facie* case for an insanity defense.

Dr. Brock opined that, "[b]y all indications, [appellant] was, indeed, experiencing symptoms of a psychosis at the time of the offenses" and was "most likely psychotic" at that time. As a result, Dr. Brock wrote "that [appellant] seems to meet the threshold criteria for an insanity defense." Dr. Brock concluded appellant's psychosis resulted from the voluntary ingestion of illegal drugs, which he said would have disqualified appellant from asserting an insanity defense, but he conceded appellant's cocaine ingestion could merely have exacerbated an underlying mental disorder. Appellant was entitled to offer evidence that his psychosis resulted from an underlying mental disorder rather than his voluntary ingestion of illegal drugs. Such evidence was highly relevant and, if believed by the fact finder, would have permitted the

- 13 -

fact finder to reject the conflicting portion of Dr. Brock's opinion and to reach an independent conclusion on the ultimate issue of appellant's sanity at the time of the offenses.

Appellant attempted to offer such testimony through Mr. Skinner. While Skinner was not able, based on appellant's concession, to testify as to the ultimate issue of insanity, his proffered testimony provided a basis to disregard Dr. Brock's legal conclusion that appellant's voluntary drug use precluded an insanity defense. Evidence admitted at the sentencing hearing confirmed that Skinner had both training as a licensed clinical social worker and experience as the director of an outpatient mental health services organization for a period of twenty-five years. Skinner met appellant within two weeks of the instant offenses and counseled him in jail on a regular basis for the six months preceding the date scheduled for trial; the notes from those counseling sessions were admitted into evidence and were available to the court when it made its ruling. Skinner could not testify, based on appellant's concession, that appellant was insane when he committed the offense or that he did not know the difference between right and wrong at that time. However, Skinner should have been permitted to testify about any relevant symptoms that he observed and that appellant reported while Skinner was treating appellant during his incarceration, including appellant's ongoing reports that he heard the voices of God and others, as well as other issues within Skinner's area of competence not touching on the ultimate issue of sanity. Other proffered evidence, including the testimony of appellant's mother, would have supported a finding that appellant began hearing voices before he became a heavy user of cocaine. This evidence, taken as a whole, if believed by the trier of fact, would have negated Dr. Brock's opinion that appellant's psychosis did not qualify him for an insanity defense because it resulted from the voluntary ingestion of illegal drugs.

Because appellant proffered relevant evidence that, if believed by the trier of fact, would have permitted the fact finder to infer he was legally insane at the time of killing, we hold the

- 14 -

trial court committed reversible error in granting the Commonwealth's motion to exclude all evidence related to appellant's mental condition and sanity at the time of the offense. Despite Skinner's inability to testify that appellant was "insane" or believed "what he did was not wrong," the testimony outlined above was highly probative of the issue of appellant's sanity, and its exclusion was reversible error.

B.

MOTION FOR CONTINUANCE AND
POST-TRIAL MOTION FOR DETERMINATION OF SANITY

Appellant also challenges the trial court's denial of his motion for a continuance and for a post-trial determination of sanity. Because we reverse and remand based on the trial court's erroneous exclusion of evidence pertaining to appellant's mental state at the time of the offense, we do not reach these other issues in this appeal.

III.

For these reasons, we hold the trial court's exclusion of all evidence related to appellant's sanity was error, and we reverse and remand for a new trial without reaching appellant's other assignments of error.

Reversed and remanded.

Bumgardner, J., dissenting.

I dissent because I conclude the trial court did not err in granting the motion *in limine* that excluded the proffered evidence of insanity. The trial court limited the exclusion to the guilt phase, and the defendant did present the evidence at the sentencing phase. The evidence that the defendant proffered did not establish a *prima facie* defense of insanity. Had the defendant pled not guilty and proceeded to trial on this evidence, he would not have been entitled to instructions on the insanity defense.

The defendant proffered the opinion of his expert, Dr. William D. Brock, that the defendant did not meet the criteria necessary for an insanity defense. The Commonwealth and the defense agreed that was his opinion. The defendant proffered testimony from a licensed clinical social worker, Joseph W. Skinner. The defendant conceded at trial and on appeal that Skinner was not an expert qualified to give an opinion about legal insanity in a criminal case. The defendant proffered other lay testimony about the defendant's conduct before and after the killing. Skinner and the other lay witnesses testified the defendant said he heard God speaking to him.

In McCulloch v. Commonwealth, 29 Va. App. 769, 514 S.E.2d 797 (1999), the defendant's expert evidence showed the defendant was sane. That evidence was not offered, but the defendant sought to prove insanity through lay testimony about observed behavior, demeanor, and actions. This Court upheld the trial court's exclusion of the lay testimony because it was insufficient to establish a *prima facie* case for insanity. Id. at 775, 514 S.E.2d at 800. The facts of that case are similar to those in this case.

In this case, the expert evidence concluded the defendant was sane. The lay testimony recited observed incidents of bizarre behavior and conduct. That testimony, on its own, was insufficient to present a *prima facie* case of insanity. As in McCulloch, it did not establish a

- 16 -

mental disease or defect. The defendant did not change the result by offering the expert's opinion in this case. Lay testimony might refute the factual basis of the expert's opinion that the defendant was not insane, but that lay testimony still did not prove the existence of a mental disease or defect.

The evidence in this case failed to raise an issue of insanity. The only witness qualified to state an opinion concluded the defendant did not meet the criteria for criminal insanity. The other witnesses could only recite observed behavior. "While lay witnesses may testify to the attitude and demeanor of the defendant, 'lay witnesses cannot express an opinion as to the existence of a particular mental disease or condition.' Mullis v. Commonwealth, 3 Va. App. 564, 573, 351 S.E.2d 919, 925 (1987) (citing Phillips v. Stewart, 207 Va. 214, 220, 148 S.E.2d 784, 789 (1966))." Herbin v. Commonwealth, 28 Va. App. 173, 183, 503 S.E.2d 226, 231 (1998).

While claiming to accept the fact that Skinner was not qualified to give an opinion, the defendant elevates his testimony to that of an expert. In his brief the defendant states, "Joseph Skinner, while not qualified to give a forensic opinion as to legal insanity in a criminal case, would have provided his opinion as to the rationale behind the Defendant's actions due to his belief that he was acting on orders from God." He argues that Skinner provides an opinion as to the rationale behind the defendant's action. However, Skinner's testimony was only admissible as a lay witness who could recite facts observed on issues in dispute.

The majority accepts the defendant's approach and permits a witness, who concedes he is not qualified to give an opinion, to do just that. If the defense is to refute its own opinion evidence from a qualified expert, the majority must treat Skinner as having the qualifications of an expert. Unless Skinner's testimony is treated as a qualified opinion, the defendant has no evidence that the defendant suffered from a mental disease. To overcome the insufficiency of

the defendant's proffered evidence, the majority raises the licensed clinical social worker to the new status of "quasi expert"; in fact, it elevates his statements to the degree that they overrule the opinion of the one witness qualified to state an opinion.

The defendant maintains he would have been entitled to instructions on the insanity defense based on the evidence proffered. No qualified witness testified that the defendant labored under a defect of reason from a disease of the mind so that he did not know the nature and consequences of his act, or if he did know, that his act was wrong. Price v. Commonwealth, 228 Va. 452, 458, 323 S.E.2d 106, 109 (1984). The only qualified testimony stated the opposite. To grant insanity instructions on the basis of the evidence proffered by the defendant would be to cast the jury onto a sea of speculation. The recital of this defendant's behavior did not provide a basis for a jury to conclude the defendant was suffering from a mental disorder or disease that caused him to be unable to distinguish right from wrong. Accordingly, I would affirm the trial court.